(958 P.2d 44)
Nos. 77,155
77,156

STATE OF KANSAS, *Appellee*, v. DARRELL G. BATESON, *Appellant*.

Opinion filed May 8, 1998.

*Michael J. Helvey*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Lee K. Durham* and *Peter D. Larato*, assistant county attorneys, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., RULON, J., and JACK A. MURPHY, District Judge, assigned.

LEWIS, J.: This appeal involves two consolidated cases and defendant's convictions in both cases. In case No. 95-CR-214, defendant appeals from his conviction for robbery, for which he re-

ceived a sentence of 61 months. In case No. 95-TR-1371, defendant appeals from his conviction as a habitual violator for driving while his license was revoked. Defendant was ordered to serve a 12-month sentence in the custody of the Secretary of Corrections, and that sentence was to run consecutive to his sentence in the robbery conviction.

## CASE NO. 95-CR-214

Defendant was convicted of robbery in this case and argues, among other things, that the evidence was insufficient to sustain his conviction.

The crime of robbery is defined by K.S.A. 21-3426 as follows: "Robbery is the taking of property from the person or presence of another *by force or by threat of bodily harm to any person.*" (Emphasis added.)

Defendant's argument on appeal is that the evidence did not show that he forced or threatened bodily harm to take property from the victim. He therefore argues that this crime was, at the very most, a theft and that we should reverse his robbery conviction and remand for sentencing on a theft conviction.

June Huston walked into her office on the day in question and found a stranger leaning over her desk and looking into the drawer where she kept her purse. Defendant was that stranger.

Huston asked defendant what he was doing and received an equivocal answer. She then emphatically told defendant to stay in her office while she checked her purse, and he did so. Huston checked her purse, discovered cash missing, and accused defendant of taking it. Defendant then advised Huston that he had to go, and he left the office and began walking quickly down the hall and up the stairs of the courthouse.

As defendant walked out the door of the office, Huston followed him down the hallways at a distance of 6 to 8 feet. When they reached an entrance to the first floor of the courthouse, defendant went through the entrance ahead of Huston. When Huston attempted to pass, the door slammed abruptly back, hitting her in the shoulder and head and knocking off her glasses. By the time

Huston had recovered from her contact with the door, defendant was nowhere to be seen.

After reporting these events to the sheriff, Huston encountered defendant again on the sidewalk. She again accused him of taking her money, and he denied it and offered her a $100 bill. She told defendant to wait for the sheriff, but he declined and left in a car driven by Barbara Tomich.

Later that day, an address book belonging to Huston was found at a construction site, and it contained the missing cash.

Based on this highly summarized version of the facts, defendant was convicted of robbery and sentenced to an upward departure of 61 months.

Defendant's principal argument is that there was no evidence at trial to indicate that force or threat of bodily harm was used by him to take Huston's property.

Initially, we find that a rational factfinder could have concluded beyond a reasonable doubt that defendant stole Huston's money and that defendant pushed the courthouse door backwards into Huston's face in an effort to dissuade her from continuing her pursuit. The question is whether the force applied occurred during the robbery or after a theft had been completed.

To prove robbery, it must be shown that property was taken from another either by force or by threat of bodily harm. *State v. Aldershof*, 220 Kan. 798, 800, 556 P.2d 371 (1976). A taking is complete when the thief has obtained the complete, independent, and absolute possession and control of the property of another. *State v. Long*, 234 Kan. 580, 585, 675 P.2d 832 (1984), *overruled in part on other grounds State v. Keeler*, 238 Kan. 356, 365, 710 P.2d 1279 (1985).

In the instant matter, the evidence indicates that defendant did not threaten Huston, nor did he use physical force in taking the money out of her purse. The only force involved in this case is defendant's act of slamming a door shut in the face of the pursuing victim, thus causing her some physical injury and further causing her to temporarily abandon the effort of recovering her property from defendant.

Was the slamming of the door in Huston's face sufficient force to convert the crime of theft into one of robbery? Ultimately, we must decide whether the taking of the property had been completed prior to the application of force.

We have a number of Supreme Court cases on this issue. However, the resolution of the issue depends primarily on the facts of each case. Our Supreme Court in *State v. Long*, 234 Kan. at 583, said: "Prior Kansas cases are not in accord with one another and as such do not provide much assistance in determining when a taking is completed."

However, there are some principles of law which we believe apply to the instant matter. In *State v. Miller*, 53 Kan. 324, 328, 36 Pac. 751 (1894), the court said:

"Nice questions may and do arise as to just when the possession of the owner of articles not attached to his person, but under his immediate charge and control, is divested, and *it may well be doubted whether a thief can be said to have taken peaceable possession of money or other thing of value in the presence of the owner, when the taking is instantly resisted by the owner, before the thief is able to remove it from his premises or from his immediate presence*." (Emphasis added.)

Some 90 years later, the Kansas Supreme Court in *State v. Long*, 234 Kan. 580, Syl. ¶ 2, said:

"A thief does not obtain the complete, independent and absolute possession and control of the money or property adverse to the rights of the owner necessary to constitute a taking *where the taking of the property is immediately resisted by the owner before the thief can remove it from the premises or from the owner's presence*." (Emphasis added.)

This rule was most recently applied by the Supreme Court in *State v. Dean*, 250 Kan. 257, Syl. ¶ 4, 824 P.2d 978 (1992).

In this case, the evidence shows that the taking of the property was immediately resisted by the owner of the property, who pursued defendant until he slammed the door in her face.

In *State v. Dean*, the initial possession of the thief was a good deal more secure than it was in the case at bar. In *Dean*, the defendant ordered and was given $3 worth of gasoline pumped into his car. After the gasoline had been pumped, the station owner asked for payment, and the defendant put his hand in his pocket and made it appear as if he had a gun. Upon sighting the alleged

"weapon," the owner was dissuaded from continuing to stop the defendant from leaving without paying for the gas, and the defendant drove away. The Supreme Court reversed the trial court, which had dismissed the defendant's robbery charge following the preliminary hearing, and said:

> "In the case currently under consideration, the State contends the facts are analogous to *Long*. The State claims that although Kwon voluntarily pumped gasoline into the vehicle, Dean could not exercise complete control and dominion over the gasoline until Dean threatened Kwon with what appeared to be a weapon to take the property from the presence of Kwon; thus, the taking was incomplete until force was used." 250 Kan. at 260.

In this case, Huston found defendant reaching into a drawer in her desk. She immediately resisted any further efforts on his part by telling him to stand away from the desk until she checked to see if any money was missing. As soon as Huston announced money was missing, defendant left the room with Huston in hot pursuit behind him. As we read the record, Huston followed defendant down the hall and down the steps of the courthouse, never being more than 6 to 8 feet behind him. In our judgment, defendant was unable to remove the property from the presence of the pursuing owner until he slammed the door in her face. The slamming of the door in her face was an act of force and results in defendant being guilty of robbery. The theft in this case was not complete, defendant's possession was imperfect, and his control of the stolen money was qualified by the immediate pursuit of the owner. See *State v. Dean*, 250 Kan. 257, Syl. ¶ 3. Defendant was required to use force to make the theft complete, and he is guilty of the crime of robbery.

In reaching this decision, we rely on *State v. Long, State v. Dean,* and *State v. Miller*. Those cases all emphasize that a taking in the presence of an owner is not complete if the taking is immediately resisted by the owner before the thief is able to remove it from the premises. In this case, the theft took place in a small office in the courthouse. Defendant was, at all times after he left her office, pursued by the owner, who was seeking to retrieve her property. We have no need to decide whether the money was removed from the premises because defendant did not remove the ill-gotten gains from the presence of the owner until he shut the door in her face

and stopped her pursuit. The fact is, the theft was immediately resisted and continued to be resisted until defendant slammed the door in Huston's face.

We hold that defendant's possession and control of Huston's property was incomplete until he slammed the door in her face, which converted what might have been a common theft into a robbery.

We affirm defendant's conviction on the charge of robbery.

## INSTRUCTIONS

Defendant next argues that the trial court erred in failing to instruct the jury on the lesser included offense of battery.

Defendant requested an instruction on the crime of battery, which the trial court refused and said:

"THE COURT: In this instance the only contact alleged is the door and that is alleged in the context of force, not physical, great physical injury or disfigurement. I don't see how we could apply the battery instruction to this case because if the elements of battery and theft are met, then the primary charge of robbery is indicated, because it contains both elements. For that reason that instruction, lesser included's not given by the Court."

We agree with the trial court. A similar issue was raised in *State v. Shortey*, 256 Kan. 166, 884 P.2d 426 (1994). In that case, defendant was convicted of aggravated robbery and argued on appeal that the trial court's failure to give a battery instruction was reversible error. The Supreme Court found no error and said:

"In *State v. Clardy*, 252 Kan. 541, 847 P.2d 694 (1993), defendant was charged and convicted of one count of aggravated robbery. He contended on appeal that he was entitled to a jury instruction on battery as a lesser included offense of aggravated robbery. Defendant denied any intent to rob the victim and denied seeing the victim robbed by defendant's companions. The evidence showed that defendant struck the victim. There was no evidence that defendant took any money from the victim. 252 Kan. at 541-45. We reversed, reasoning:

" 'Under K.S.A. 21-3107(3), the defendant in a criminal prosecution has a right to have the court instruct the jury on all lesser included offenses established by substantial evidence. Where there is no substantial testimony applicable to the lesser degrees of the offense charged, and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary. *State v. Deavers*, 252 Kan. 149, 154-55, 843 P.2d 695 (1992).

" 'When an information alleges a robbery was accomplished by force and that bodily harm was inflicted in the course of the robbery, battery will not be a lesser included offense of the aggravated robbery unless there is substantial evidence to prove the lesser offense of battery has been committed. Under the particular circumstances of this case, there is substantial evidence that the lesser degree of the offense charged had been committed, and an instruction on battery as a lesser included offense was required.' 252 Kan. at 547." 256 Kan. at 171-72.

The court goes on to say:

"*Clardy* is distinguishable on its facts. The victim's testimony herein clearly establishes that an aggravated robbery occurred—as does defendant's own testimony. Under either version, defendant was able to take and intentionally did take the currency and coin changer from the person of Davis as the direct result of the beating he was inflicting upon Davis. We find no error in the trial court's failure to instruct on aggravated battery or battery under K.S.A. 21-3107." 256 Kan. at 172.

In this case, considering all of the evidence, we conclude that the offense, if committed, was clearly of the higher degree and, as a result, instructions relating to the lesser degree of the offense were not necessary.

## EXCULPATORY EVIDENCE

A key player in the entire scenario was Barbara Tomich. Tomich appears to have been defendant's girlfriend and was involved, to some extent, in aiding defendant to escape from the owner of the property and from the scene of the crime.

Apparently, on the night before trial, Tomich told one of the detectives that she was the person who took the money from Huston's purse. Defendant's attorney argues that he was not aware of this alleged confession until after defendant's trial. He accuses the State of withholding exculpatory evidence and, on that basis, asks that we order a new trial.

" 'Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant.' " *State v. Aikins*, 261 Kan. 346, 381, 932 P.2d 408 (1997). Due process requires the prosecution to disclose material evidence favorable to the accused. *State v. Humphrey*, 258 Kan. 351, 355, 905 P.2d 664, *modified* 258 Kan. 372, 905 P.2d 664 (1995).

To justify reversal of a conviction for failure to disclose evidence, the evidence withheld must be clearly exculpatory and the withholding of the evidence must have been clearly prejudicial to a defendant. In order to be prejudicial, the evidence must have prejudiced a defendant's ability to defend against the charges. The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the trial would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. 258 Kan. at 355.

The evidence against defendant is simply overwhelming. Huston discovered him in her office, leaning over the desk drawer where she kept her money. Huston then checked her purse and found that her money was missing, and defendant quickly retreated from Huston's office with Huston in hot pursuit. The evidence is so overwhelming that we hold that defendant was not prejudiced by the withholding of Tomich's attempt to confess to the crime. We conclude that even had that evidence been offered by the defendant, there exists no chance that the jury would have returned a different verdict.

This issue was raised by defendant on his motion for a new trial. "Appellate review of an order denying a new trial is limited to whether the trial court abused its discretion." *Taylor v. State*, 251 Kan. 272, 277, 834 P.2d 1325 (1992). We have reviewed the record in this matter and conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

## CUMULATIVE ERROR

Finally, defendant seeks to dislodge his robbery conviction by arguing cumulative trial error.

" ' "Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant." ' " *State v. Castoreno*, 255 Kan. 401, 411, 874 P.2d 1173 (1994) (quoting *State v. Lumbrera*, 252 Kan. 54, 57, 845 P.2d 609 [1992]).

We do not hesitate to hold that defendant was not denied a fair trial because of cumulative trial errors.

## CASE NO. 95-TR-1371

This appeal arises from the events which took place late in September 1995. On the day in question, a City of Perry police officer observed defendant backing his car onto a street and "throwing gravel." Defendant then put the car in drive and sped down the street, where he almost collided with the police officer's car.

The officer in the patrol car stopped defendant for reckless driving and asked him for his driver's license. Defendant replied that he had no driver's license. The officer asked him to clarify whether he did not have his license with him or whether he had no license at all. Defendant then said, "No, I have no driver's license."

The fact is, defendant's driver's license had been revoked.

Defendant's explanation for his driving on the date in question is that his adult brother was lost, he was afraid for his brother's safety, and he was, therefore, compelled to drive. He makes this argument despite the fact that Tomich was in the passenger seat beside him all the time he was driving in fear of his brother's safety.

## SUFFICIENCY OF THE EVIDENCE

Defendant first argues that a conviction under the habitual violator statute requires a finding of criminal intent and that there was no such evidence because he was compelled by a family emergency to drive while prohibited.

K.S.A. 21-3201(a) provides:

"Except as otherwise provided, a criminal intent is an essential element of every crime defined by this code. *Criminal intent may be established by proof that the conduct of the accused person was intentional or reckless. Proof of intentional conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a reckless manner.*" (Emphasis added.)

In this case, there is absolutely no question that defendant was aware that his driver's license had been suspended and that it was a crime for him to be driving the vehicle. At one point, defendant was asked:

"Q. Prior to this incident in September did you have any knowledge that your license had been revoked.

"A. I knew they were—I knew they were suspended."

Later, under cross-examination, defendant testified as follows:

"Q. Mr. Bateson, you stated that you knew that you were revoked when you were driving when officer Sloniger stopped you?

"A. I knew that I was suspended.

"Q. You knew that you were suspended?

"A. Right.

"Q. Driving—or suspending your driver's license means you're not supposed to drive; right?

"A. Right.

"Q. And you knew that; right?

"A. Yes.

"Q. And—okay. Now, you stated also that you shouldn't have been where you were at that time. That's because you knew that you were suspended; isn't that right?

"A. I knew that I shouldn't have been behind the wheel, yes."

Defendant has admitted under oath that on the date in question that his driver's license had been suspended. On the basis of defendant's own testimony, there is no question that he possessed the requisite criminal intent in driving a motor vehicle on the streets of the City of Perry, Kansas, when he knew that his driver's license had been revoked.

## COMPULSION

Defendant asserts that he is not guilty of driving as a habitual violator and asserts the compulsion defense.

The compulsion defense, found in K.S.A. 21-3209, is analyzed in *State v. Davis*, 256 Kan. 1, 883 P.2d 735 (1994).

We do not intend to prolong the opinion by discussing the compulsion defense. That defense is simply not available to defendant in this case. As we pointed out earlier, Tomich, who had been driving the car earlier that day, was seated in the passenger seat when defendant was stopped by the police officer. There is absolutely no evidence that Tomich could not have driven the vehicle in the search for defendant's brother. In spite of having someone available to drive legally, defendant decided to drive despite the

fact he knew he did not have a valid driver's license. The compulsion defense is not available under these facts.

Did the trial court err in failing to instruct the jury on compulsion? From what we have said in the section of this opinion immediately above, we hold that the trial court did not err in failing to instruct the jury on compulsion.

## DO K.S.A. 1995 SUPP. 8-286 AND K.S.A. 1995 SUPP. 8-287 PROVIDE ADEQUATE NOTICE TO PROTECT A DRIVER'S RIGHTS TO DUE PROCESS?

Finally, defendant contends that the notification procedures in the statutes cited above are insufficient to satisfy the requirements of due process.

This issue has been decided adversely to the position of defendant by the Supreme Court in *State v. Lewis*, 263 Kan. 843, Syl. ¶ 10, 953 P.2d 1016 (1998). In *Lewis*, the Supreme Court held that the notice provision contained in the habitual violator statutes comport with notice requirements of the Due Process Clause of the United States Constitution. This renders defendant's argument on this issue without merit.

Affirmed.