No. 77,155
No. 77,156

STATE OF KANSAS, *Appellee*, v. DARRELL G. BATESON, *Appellant*.

(970 P.2d 1000)

Opinion filed December 11, 1998.

*Jennifer C. Roth,* assistant appellate defender, argued the cause, and *Michael J. Helvey*, assistant appellate defender, and *Jessica R. Kunen*, were on the brief for appellant.

*Jim A. Vanderbilt,* county attorney, argued the cause, and *Peter D. Larato,* assistant county attorney, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Darrell G. Bateson was convicted of robbery (K.S.A. 21-3426) in Case No. 95-CR-214 and of a traffic offense in Case No. 95-TR-1371. The cases were consolidated on appeal and the convictions were affirmed by the Court of Appeals. *State v. Bateson*, 25 Kan. App. 2d 90, 958 P.2d 44 (1998). We granted review of a single issue concerning the sufficiency of the evidence supporting the robbery conviction. The specific question is whether there was sufficient evidence of a forceful taking of property as opposed to a theft of property.

## FACTS

The precise layout of the area involved in the offense is unclear as, at trial, the parties relied on a diagram not before us and juror viewing of the scene. With these limitations, the facts may be summarized as follows. On October 10, 1995, June Huston, Jefferson County Planning and Zoning Administrator, was alone in her office in the basement of the courthouse. She left briefly to get some information from an adjoining office. On her return she observed defendant bent over behind her desk. She asked what he was doing and he responded that he was "looking for somebody." Huston then saw that the lower desk drawer where she kept her handbag was partially open. She took out her purse, looked inside and saw that her cash ($95) was gone from her wallet as well as an address book. She demanded the return of these items. Defendant then turned, left the office, and walked rapidly to the stairs. The victim was not threatened, nor was any force applied to her. Huston followed, some 6 to 8 feet behind. There are two flights of steps with a landing and a turn between the basement and the main floor. When entering the main floor from the basement, one passes through two doors described as being 3 feet apart. The doors have glass in their upper parts. Defendant went through the first door, followed by Huston. Defendant went through the second door. He was not in the victim's sight at the time. As Huston opened the second door, it came back rapidly and hit her in the face. She concluded this had to have been the result of defendant having intentionally slammed the door in her face. Defendant was not in sight in the courthouse when Huston subsequently came through the second door. She does not know from which entrance he left the building, but she subsequently confronted him again on the courthouse grounds where he offered her $100. He then left in a vehicle driven by a woman. The victim's money and address book were recovered from a nearby alley Bateson had been seen entering after he had left the grounds prior to his return thereto. Identity is not an issue in this case. The jury was instructed on theft as a lesser included offense of robbery.

## STATUTES

"Robbery is the taking of property from the person or presence

of another by force or by threat of bodily harm to any person."
K.S.A. 21-3426. Robbery is a severity level 5 person felony. K.S.A.
21-3426.

"Theft is any of the following acts done with intent to deprive
the owner permanently of the possession, use or benefit of the
owner's property: (1) Obtaining or exerting unauthorized control
over property." K.S.A. 21-3701(a). Theft of property of the value
of less than $500 is a class A nonperson misdemeanor. K.S.A. 21-
3701(b)(3).

## PRIOR CASE LAW

Defendant contends that the evidence shows he obtained unau-
thorized control over the victim's property and left her office with-
out force or threat of bodily harm. Any force was subsequent to
taking of the property and would, at most, constitute the separate
offense of "battery." Thus, he argues that we reverse the robbery
conviction and remand the case for resentencing him for conviction
of theft, a class A nonperson misdemeanor. Defendant likens the
facts herein to those in *State v. Aldershof*, 220 Kan. 798, 556 P.2d
371 (1976).

The State argues that the victim herein immediately resisted the
taking of her property and that defendant used force (slamming
the door) to effect the removal of the property from her presence
and the premises. The State likens the facts herein to *State v. Dean*,
250 Kan. 257, 824 P.2d 978 (1992); *State v. Long*, 234 Kan. 580,
675 P.2d 832 (1984); and *State v. Miller*, 53 Kan. 324, 36 Pac. 751
(1894).

The issue herein involves the difference between robbery and
theft. The four cases cited by the parties turn on the difference,
and discussion thereof is necessary to the resolution of this appeal.

In *Miller*, 53 Kan. 324, the court considered whether the force
required in a robbery must precede the taking of the property. The
facts were that Miller went into a laundry to pick up a shirt. When
the proprietor opened the cash drawer, Miller grabbed money
therein. The proprietor caught Miller's hand while it was still in
the drawer and released it only when Miller cut the proprietor's
hand with a knife. Miller ran for the door but was caught by the

victim who released his hold only after being stabbed in the abdomen.

On appeal, Miller argued that the violence was merely for the purpose of breaking away from the victim and that, if he took the money, he had it in his possession before any violence occurred. This court disagreed and adopted the general rule that the violence to the person and the taking may be contemporaneous. Under the facts, the court concluded Miller had not obtained complete possession of the money before using the violence on the proprietor. The court noted there was evidence Miller cut the victim's hand in order to remove his own hand containing the money from the cash drawer. The court stated:

"Nice questions may and do arise as to just when the possession of the owner of articles not attached to his person, but under his immediate charge and control, is divested, and it may well be doubted whether a thief can be said to have taken peaceable possession of money or other thing of value in the presence of the owner, when the taking is instantly resisted by the owner, before the thief is able to remove it from his premises or from his immediate presence." 53 Kan. at 328.

In *Aldershof*, 220 Kan. 798, two women were sitting in a booth in a tavern. Lighting was poor by virtue of a power outage. One woman left the table. While she was gone, Aldershof went to the booth and grabbed both the absent woman's purse from the table and the other woman's purse from her lap. The woman at the booth pursued Aldershof to the parking lot and grabbed his shirt. He turned, hit her in the eye, and fled. He was convicted of robbery.

On appeal, Aldershof argued that the evidence showed no force or threat during the taking of the purses and that the purses were taken by stealth; therefore, the crime was a theft not a robbery. The State argued the crime was robbery as the taking was still in progress when the victim was hit in the parking lot.

*Aldershof* thoroughly discussed the law of theft and robbery and stated:

"We are inclined to follow the general rule recognized in *State v. Miller*, supra, that to constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no

violence except to resist arrest or to effect his escape. We believe that the test should be whether or not the taking of the property has been completed at the time the force or threat is used by the defendant. This must of necessity be determined from the factual circumstances presented in the particular case before the court." 220 Kan. at 803.

Applying this rule to the facts in *Aldershof*, we concluded that the taking of the purses had been completed when the thief snatched the purses and left the premises of the tavern. Any violence occurring after the thief left the tavern with the purses under his control "could not convert the theft into a robbery, although it may well have been the basis for a charge of battery under K.S.A. 21-3412." 220 Kan. at 804.

In *Long*, 234 Kan. 580, we again considered the question of the distinction between robbery and theft. Long had entered a sales building where the Wolfs sold milk. The building was open to the public with customers helping themselves to the milk in the display case and dropping payment into a locked, slotted money box mounted on a wall. Ms. Wolf was not in the sales room but saw Long drive up and park. She went into the sales building to tell him more milk would be available soon. When she entered the room, Ms. Wolf observed Long crouched in front of the money box, which had been pried open. Long had his hands in his pockets and a dollar bill was observed on the floor beneath the money box. Ms. Wolf positioned herself in the doorway " 'so as to prevent the defendant from leaving the building.' " 234 Kan. at 581. She asked Long twice what he was doing, but he made no response. Long walked toward Ms. Wolf, shoved her arm out of the way, forced himself by her, and drove off in his car. Long was convicted of robbery.

On appeal, Long argued that the force used against Ms. Wolf occurred after the taking to effect his escape and therefore was not sufficient to constitute a taking by force as required by the robbery statute. The Court of Appeals agreed (*State v. Long*, 8 Kan. App. 2d 733, 667 P.2d 890 [1983]). We accepted review of the case and reversed the Court of Appeals. Applying the *Miller* rule, we held the ultimate question was whether the taking of the money from

the money box was completed prior to the appellant's exit from the sale building.

Acknowledging that "[n]o established set of guidelines exists which can be readily applied for a quick and easy answer to this question," we stated:

"Prior Kansas cases are not in accord with one another and as such do not provide much assistance in determining when a taking is completed. Some of these cases imply a taking is not complete until the property has been removed from the premises of the owner, whereas others indicate the taking is accomplished at the moment the thief, with the intent to steal, removes the property from its customary location." 234 Kan. at 583.

After reviewing some cases involving issues of whether the appropriate crime was theft or attempted theft, we stated:

"As these cases demonstrate, inherent difficulties exist in determining when possession attaches to constitute a completed taking for a robbery conviction under K.S.A. 21-3426. Commission of the crime of robbery is complete when the robber takes possession of the property, as the element of asportation is no longer required to complete the crimes of theft or robbery. See, e.g., *State v. Knowles*, 209 Kan. at 678; *State v. Aldershof*, 220 Kan. at 804. The defendant takes possession of the property of another when he exercises dominion and control over the property. 4 Wharton's Criminal Law § 472 (14th ed. 1981). Earlier cases have recognized the term 'possession,' as it relates to theft or possession of stolen property, imports more than an innocent handling of property; the term denotes control, or the right to exercise control and dominion, over the property. *State v. Knowles*, 209 Kan. at 678; *State v. Brown*, 203 Kan. 884, 885-86, 457 P.2d 130 (1969). See also *State v. Porter*, 201 Kan. 778, 781, 443 P.2d 360 (1968), *cert. denied* 393 U.S. 1108 (1969); *State v. Phinis*, 199 Kan. 472, 430 P.2d 251[, *overruled on other grounds State v. Milow*, 199 Kan. 576, 433 P.2d 538] (1967). 52A C.J.S., Larceny § 6, states:

" '[I]n order to constitute a taking the prospective thief must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired adverse to the rights of the owner therein . . . .

. . . .

" 'If the possession of the would-be taker is imperfect in any degree, or if his control of the thing desired is qualified by any circumstance, however slight, the taking is incomplete and the act is only an attempt.' " 234 Kan. at 585.

Upon application of these rules and cases to the facts, we concluded that "a thief does not obtain the complete, independent and absolute possession and control of money or property adverse to the rights of the owner where the taking is immediately resisted

by the owner before the thief can remove it from the premises or from the owner's presence." 234 Kan. at 586. Therefore, using this rule, Long did not obtain actual possession of the money and the taking was not completed until the defendant by force overcame Ms. Wolf's efforts to stop him from making his exit from the sales room.

In *Dean*, 250 Kan. 257, the issue was again before us. Dean drove to a full-service service station and asked the attendant to pump gas into his vehicle. When the attendant asked for payment, Dean made a gesture under his coat jacket which made the attendant believe Dean was pointing a gun at him. The attendant jumped back and Dean drove away. The aggravated robbery charge was dismissed before trial. On appeal, we considered whether defendant's ordering the pumping of gasoline prior to payment and immediately leaving the presence of the owner without payment by the use of threat or force constitutes robbery or merely theft. 250 Kan. at 258.

After reviewing *Miller*, *Aldershof*, and *Long*, we concluded that Dean had not left the premises or even attempted to drive away before he used force. He made his threat to prevent resistance to the taking and not as a means of escape and, therefore, the facts supported the charge of aggravated robbery. The dismissal was reversed, and the case was remanded for further proceedings.

## COURT OF APPEALS' OPINION

In affirming Bateson's robbery conviction, the Court of Appeals held:

"In this case, Huston found defendant reaching into a drawer in her desk. She immediately resisted any further efforts on his part by telling him to stand away from the desk until she checked to see if any money was missing. As soon as Huston announced money was missing, defendant left the room with Huston in hot pursuit behind him. As we read the record, Huston followed defendant down the hall and down the steps of the courthouse, never being more than 6 to 8 feet behind him. In our judgment, defendant was unable to remove the property from the presence of the pursuing owner until he slammed the door in her face. The slamming of the door in her face was an act of force and results in defendant being guilty of robbery. The theft in this case was not complete, defendant's possession was imperfect, and his control of the stolen money was qualified by the immediate pursuit of the owner. See *State v. Dean*, 250 Kan. 257, Syl. ¶ 3.

Defendant was required to use force to make the theft complete, and he is guilty of the crime of robbery.

"In reaching this decision, we rely on *State v. Long, State v. Dean*, and *State v. Miller*. Those cases all emphasize that a taking in the presence of an owner is not complete if the taking is immediately resisted by the owner before the thief is able to remove it from the premises. In this case, the theft took place in a small office in the courthouse. Defendant was, at all times after he left her office, pursued by the owner, who was seeking to retrieve her property. We have no need to decide whether the money was removed from the premises because defendant did not remove the ill-gotten gains from the presence of the owner until he shut the door in her face and stopped her pursuit. The fact is, the theft was immediately resisted and continued to be resisted until defendant slammed the door in Huston's face.

"We hold that defendant's possession and control of Huston's property was incomplete until he slammed the door in her face, which converted what might have been a common theft into a robbery." 25 Kan. App. 2d at 94-95.

While *Aldershof* was cited by the Court of Appeals, it was not discussed nor was there an attempt to distinguish it from the facts in this case.

## DISCUSSION

After reviewing all the evidence, viewed in the light most favorable to the State, as we are required to do in sufficiency of the evidence questions (*State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 [1997]), the following occurred. Bateson took the victim's property from her handbag while the victim was absent from her office. He was standing near the desk drawer where the handbag was located when she returned. He stepped away from the desk and stood near the door while the victim examined her handbag, noticed the loss, and demanded the return of her property. He made no threats and used no force. There is clearly no robbery at this point. Defendant simply walked rapidly away and went up the stairs. The victim ran after him but apparently could not close the 6 to 8 foot space separating them. She did not see him go through the door at issue at the head of the stairs but was hit by it as she attempted to go through. She believes the defendant slammed the door on her. Assuming defendant did slam the door on the victim to slow or stop her pursuit, did this conduct convert the theft into a robbery? We believe not.

In reaching this conclusion, we compare the facts to those in *Miller, Long, Dean,* and *Aldershof.* In *Miller,* the force came while the defendant's hand was caught in the till, literally, by the owner. In *Long,* the owner was physically blocking Long's exit from the room where the property had been located. He could not leave without removing the owner from the doorway, which he accomplished by force. In *Dean,* there was no crime until after Dean was asked to pay for the gasoline he had requested to be pumped into his vehicle. He then threatened the service station attendant and left. The threat was contemporaneous with the wrongful taking. Clearly in each of these cases, the violence was contemporaneous with the taking, as the perpetrator did not have complete control and dominion over the property prior to resorting to violence or threat to accomplish such control.

The facts in *Aldershof* are much more analogous to those before us. Possession of the property was accomplished by stealth. The violence occured when the victim caught up with the perpetrator in the parking lot of the building where the taking occurred and attempted to detain him.

Here, as in *Aldershof,* the defendant gained peaceable possession of the property in the absence of its owner and used no violence except to aid his escape. As we held in *Aldershof*:

"To constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property."

"The test is whether or not the taking of the property has been completed at the time the force or threat is used by the defendant, which must be determined from the factual circumstances in each case."

"Robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape." 220 Kan. 798, Syl. ¶¶ 1, 2, 3.

In the case before us, defendant's use of force did not precede nor was it contemporaneous with the taking of the property. Defendant had control of the property when he left Huston's office. He was out of her sight at the time of the door slamming incident and the taking was complete before the force occurred. The evidence supports a theft conviction but not a robbery conviction. As

in *Aldershof*, the subsequent violence did not convert the theft into a robbery although it could be a basis for a charge of battery under K.S.A. 21-3412.

## DISPOSITION

Defendant requests that his robbery conviction be reversed.and that he be resentenced on the lesser included offense of theft under $500, as established by the evidence. This procedure is consistent with *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993).

The decision of the Court of Appeals affirming the conviction of robbery is reversed. The defendant's district court conviction for robbery is reversed, and the case is remanded to the district court to resentence the defendant for conviction of theft of property of a value of less than $500, a class A nonperson misdemeanor.