NOT DESIGNATED FOR PUBLICATION

Nos. 123,578
123,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEWIS BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; MARILYN M. WILDER, judge. Opinion filed January 7, 2022. Sentences vacated and case remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Jodi Liftin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON, J. and RICHARD B. WALKER, S.J.

PER CURIAM: The Harvey County District Court revoked Defendant Lewis Brown's probation in two cases and ordered that he serve a modified prison sentence for robbery in one and the original sentence for criminal threat in the other. Brown has appealed on the grounds his criminal history was incorrectly overstated at his original sentencing, resulting in terms of imprisonment he can now challenge as illegal. We agree with Brown that his 1998 Missouri conviction for robbery was improperly treated as a person felony for criminal history purposes in both cases. We, therefore, vacate the sentences and remand these cases to the district court for resentencing.

1

In a single hearing in March 2019, Brown pleaded no contest to robbery in one case and criminal threat in a second case. The district court imposed consecutive prison terms of 128 months on the robbery conviction and 15 months on the criminal threat conviction and, consistent with a plea agreement, placed Brown on probation. Brown violated the terms of his probation. The circumstances of the underlying crimes and the probation violation are irrelevant to this appeal. The district court revoked Brown's probation on May 19, 2020, and ordered him to serve a modified sentence of 75 months for the robbery consecutive to the original 15-month sentence for the criminal threat. Brown has appealed.

LEGAL ANALYSIS

As we have indicated, on appeal, Brown does not dispute the district court's decision to revoke his probation. He challenges how his criminal history score was determined in these two cases and argues the sentences the district court ultimately imposed are too long.

A defendant may challenge an illegal sentence at any time while he or she is serving the sentence. K.S.A. 2020 Supp. 22-3504(a). A sentence is illegal if it does not conform to the governing statutory requirements, including those directing how criminal histories should be determined. K.S.A. 2020 Supp. 22-3504(c)(1); *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). Brown may raise the point now, even though he did not challenge his criminal history or the underlying sentences when the district court imposed them. The State agrees that procedurally this issue is properly before us.

The district court determined Brown had a criminal history score of B, based on two person felony convictions. In both cases, the district relied on Brown's 1998 Missouri conviction for first-degree robbery as one of the predicate felonies. And in each case, the district court relied on the other case as the second predicate felony—the criminal threat

2

conviction was scored in Brown's criminal history in the Kansas robbery case; and the Kansas robbery conviction was scored in his criminal history for the criminal threat case.

Based on when Brown committed the crimes of conviction in these two cases, the parties agree the rule established in *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018), applies to his criminal history calculation, so any out-of-state felony conviction must proscribe the same or narrower conduct as the comparable Kansas crime to be scored as a person felony. If the elements of the out-of-state crime are broader, then the conviction should be treated as a nonperson felony for criminal history purposes. Person felonies increase a defendant's presumptive guidelines sentence more than nonperson felonies, so the classification is legally significant.

*Missouri Robbery Conviction*

In 1998, a person would be guilty of robbery in the first degree in Missouri if he or she:

"forcibly steals property and in the course thereof . . . .
"(1) Causes serious physical injury to any person; or
"(2) Is armed with a deadly weapon; or
"(3) Uses or threatens the immediate use of a dangerous instrument against any person; or
"(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." Mo. Rev. Stat. § 569.020.1 (1998).

Robbery in the first degree is a felony. The key to our discussion is its classification as a person or nonperson felony. And central to that determination, "forcibly steals" was and is statutorily defined in Missouri to include the use of force for "the retention [of property] immediately after the taking." Mo. Rev. Stat. § 569.010(1) (1998).

In keeping with that definition, Missouri courts hold that robbery includes a completed theft accomplished without force or threat of force, if the thief then threatens or uses the proscribed force to get away with the property. See *Wallace v. State*, 573 S.W.3d 136, 145 (Mo. App. 2019); *State v. Whittaker*, 551 S.W.3d 498, 501-02 (Mo. App. 2018); *State v. Harris*, 622 S.W.2d 742, 744-45 (Mo. App. 1981). A common scenario entails a shoplifter who resorts to force to escape with the stolen merchandise when confronted outside a store by security officers. See *Whittaker*, 551 S.W. 3d at 502-04 (stating rule and surveying cases); see also *Harris*, 662 S.W.2d at 744-45.

For criminal history purposes, the comparable Kansas crimes would be robbery or aggravated robbery codified in K.S.A. 2017 Supp. 21-5420:

"(a) Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person.

"(b) Aggravated robbery is robbery, as defined in subsection (a), when committed by a person who:

"(1) Is armed with a dangerous weapon; or

"(2) inflicts bodily harm upon any person in the course of such robbery."

In contrast to Missouri, the Kansas appellate courts have repeatedly recognized that a thief's threat or use of force to escape after taking control of someone else's property does not make the theft a robbery. *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012); *State v. Bateson*, 266 Kan. 238, 246-47, 970 P.2d 1000 (1998); *State v. Aldershof*, 220 Kan. 798, Syl. ¶ 3, 556 P.2d 371 (1976) ("Robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape."). The threat or use of force may itself constitute an assault or battery or the corresponding aggravated felony versions of those crimes, distinct from and in addition to the theft. *Bateson*, 266 Kan. at 246-47; *Aldershof*, 220 Kan. at 804.

4

The facts in *Aldershof* sharply illustrate the difference between Kansas and Missouri law on this point. While in a dimly lit Wichita club, Aldershof filched the purses of two female patrons and left the establishment. One of the women confronted Aldershof in the parking lot. He punched her in the face and drove off in a pickup. The court held that the facts established a theft rather than a robbery because Aldershof had secured possession of and exercised dominion over the purses before the physical confrontation. 220 Kan. at 803-04.

In short, Missouri's robbery in the first degree criminalizes a broader range of conduct than does the Kansas statute defining robbery and aggravated robbery. Under *Wetrich*, Brown's 1998 Missouri conviction, therefore, must be scored as a nonperson felony for criminal history purposes. As a result, the district court overstated Brown's criminal history in sentencing him on both Kansas convictions for robbery and criminal threat on which his probation was revoked. Two other panels of this court have considered the same issue and have come to the same conclusion on how Missouri robbery convictions should be scored in a defendant's criminal history. See *State v. Weston*, No. 122,320, 2021 WL 1945153, at *6 (Kan. App. 2021) (unpublished opinion); *State v. Kanatzar*, No. 119,399, 2020 WL 593965, at *12 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1044 (2021).

Alternatively, the State contends the Kansas statutes criminalizing misdemeanor and aggravated assault, misdemeanor battery and aggravated battery, or criminal threat should be compared to the Missouri robbery statute in applying the *Wetrich* rule. We find the tersely presented argument unpersuasive for several reasons.

First, *Wetrich* appears to begin with the identification of a Kansas criminal statute that is roughly similar to the out-of-state conviction in the sense of proscribing the same general actus reus or bad conduct undertaken with a more or less common mens rea or bad intent. A court then compares the elements of the out-of-state crime with the

identified Kansas crime to determine if they are the same or narrower, meaning the foreign conviction can be scored as a person felony for criminal history purposes. In *Wetrich*, the court identified and then compared Missouri and Kansas burglary statutes. After finding the Missouri statute to be broader than the Kansas statute, the court did not look at other possible comparators, such as criminal trespass.

Here, the Missouri and Kansas robbery statutes criminalize markedly similar conduct in that both prohibit the taking of property from another through a threat, display, or use of force, including weapons. The crimes do differ in some relatively minor respects, and the Missouri crime is broader than the Kansas crime. Those determinations, however, conclude the *Wetrich* inquiry and define the outcome for criminal history purposes. The process does not then extend to Kansas crimes that are demonstrably less like Missouri's robbery statute. The State's effort to shift the comparison to forms of assault, battery, and criminal threat fails for that reason.

Moreover, the *Weston* court did compare those crimes with Missouri robbery in the second degree and found that form of robbery to be both broader and materially dissimilar to them. 2020 WL 4219895, at *5-6. Assuming such a comparison to be appropriate in the first instance, we find the reasoning in *Weston* to be persuasive here and find those crimes are not comparable to the Missouri robbery in the first degree. Robbery in the first degree is itself broader than but inclusive of robbery in the second degree. That is, all of the elements of robbery in the second degree are elements of robbery in the first degree. A fortiori, if Missouri robbery in the second degree is not comparable to the Kansas crime of robbery, then Missouri robbery in the first degree cannot be.

In addition, however, such a secondary comparison of Kansas crimes necessarily should include theft, as well. The Kansas courts have recognized theft to be a lesser degree of the same historical crime as robbery, so a jury should be instructed on both in

6

factually appropriate circumstances. See *Plummer*, 295 Kan. at 164-65. The commonality rests on the perpetrator's unlawful taking of property—a key mutual element absent in assault, battery, and criminal threat. 295 Kan. at 164; *State v. Long*, 234 Kan. 580, 591-92, 675 P.2d 832 (1984) ("unlawful taking of the property of another is the gravamen of both" robbery and theft). Those cases and the historical connection between theft and robbery tilt in favor of theft, a nonperson crime, as the appropriate comparator if robbery were discarded, although we don't think it should be. Likewise, there would be no definitive basis for preferring assault, battery, or criminal threat over theft in any such analysis—supporting the conclusion we otherwise reach on how Brown's 1998 Missouri robbery conviction should be treated.

As a tertiary argument on appeal, the State has suggested the record does not clearly show what Brown's old robbery conviction was for. The entry in the presentence investigation report is garbled. But the State introduced a journal entry of conviction and a Jackson County Circuit Court printout establishing the crime, the sentencing date, and the disposition at the sentencing hearing. Those documents adequately clarified the presentence report, and we find the district court record and the record on appeal sufficiently establish the Missouri conviction for criminal history purposes.

*Criminal Threat Conviction*

Brown also contends his conviction for criminal threat should not have been scored as part of his criminal history in the Kansas robbery case. He bases his contention on *State v. Boettger*, 310 Kan. 800, 823-24, 450 P.3d 805 (2019), that held the statutory proscription of reckless criminal threat in K.S.A. 2018 Supp. 21-5415(a)(1) to be unconstitutionally overbroad on its face. That portion of the criminal threat statute is, therefore, unenforceable. The Kansas Supreme Court stayed the mandate in *Boettger* to allow the State the opportunity to seek review of the constitutional issue in the United

States Supreme Court. The Court denied the State's petition for a writ of certiorari, 140 S. Ct. 1956, and the mandate issued on June 23, 2020.

The holding in *Boettger* does not apply retroactively to void convictions for reckless criminal threat that became final before the mandate issued, and those convictions also could be scored for criminal history purposes in sentencing defendants before then. *State v. Louis*, 59 Kan. App. 2d 14, Syl. ¶ 9, 476 P.3d 837 (2020) (scoring criminal history using criminal threat conviction), *rev. denied* 313 Kan. 1044 (2021); *State v. McCullough*, No. 122,167, 2021 WL 646111, at *4 (Kan. App. 2021) (unpublished opinion) (same), *rev. denied* 314 Kan. __ (August 27, 2021). That undoes Brown's claim here because he was originally sentenced on the robbery conviction in June 2019 before *Boettger* was even announced and the sentence was modified in May 2020 before *Boettger* became final.

Moreover, Brown seeks relief here on a motion to correct an illegal sentence rather than in a direct appeal from his robbery conviction, further undercutting any argument for applying *Boettger*. In that respect, the result we and the other panels have reached conforms to the general rule in K.S.A. 2020 Supp. 22-3504(c), precluding relief for an illegal sentence if the defendant's claim is based on an appellate court decision that changes the law after the district court has imposed sentence. The statute includes a limited exception if the change occurs during the pendency of a defendant's direct appeal of the conviction resulting in the sentence. The statute essentially codifies the sentencing rule pronounced earlier in *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019), and precludes any relief for Brown. The district court properly included Brown's criminal threat conviction in the criminal history used to sentence him in the Kansas robbery case.

The limitation in K.S.A. 2020 Supp. 21-6810(d)(9), prohibiting the scoring of a conviction for criminal history purposes if the crime has been declared unconstitutional, does not require a different result. That statute explains *what* should be scored in

compiling a defendant's criminal history; it does not establish *when* the scoring takes place. But K.S.A. 2020 Supp. 21-6803(c) defines "criminal history" as the offender's record of convictions "at the time such offender is sentenced." In tandem, K.S.A. 2020 Supp. 21-6810(d)(9) and K.S.A. 2020 Supp. 21-6803(c) are consistent with the scope of a correctable illegal sentence in K.S.A. 2020 Supp. 22-3504 and *Murdock*. Brown was sentenced for the robbery (whether we consider the original sentence or the modified sentence) before *Boettger* became final, so his criminal threat conviction was properly included in his criminal history.

*Rejoinder to Separate Opinion*

Judge Powell would uphold the modified 75-month sentence the district court imposed on Lewis after revoking his probation even though it plainly exceeds what would be authorized under the sentencing guidelines, given Lewis' properly scored criminal history. He relies on K.S.A. 2020 Supp. 22-3716(c)(1)(C), permitting the imposition of "any lesser sentence" upon a probation revocation, and on Kansas Supreme Court authority construing comparable statutory language. We have declined to take that course for two interlocking reasons.

First, as Judge Powell mentions, the State has never asserted this argument. The point does not go to our jurisdiction, so we need not consider it. Cf. *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016) ("appellate court . . . has a duty to question jurisdiction on its own initiative."). We typically decline to address issues the parties have not briefed. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("Issues not adequately briefed are deemed waived or abandoned."); see also *State v. McCoy*, No. 122,650, 2021 WL 1149180, at *2 (Kan. App. 2021) (unpublished opinion) (issue "not briefed" deemed waived). That alone is sufficient to dispose of the matter. If we were to decide the point Judge Powell raises, we really would have an obligation to invite the parties—particularly Brown, who would be disadvantaged—to respond before

9

ruling. *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016); *State v. Puckett*, 230 Kan. 596, Syl. ¶ 2, 620 P.2d 1198 (1982).

Second, even without the benefit of the parties' input, we question the substantive conclusion Judge Powell reaches, especially based on the case authority he cites. He relies on *State v. Roth*, 308 Kan 970, 424 P.3d 529 (2018), and *State v. Sandoval*, 308 Kan. 960, 960, 425 P.3d 365 (2018), that are functionally companion opinions the Kansas Supreme Court issued the same day. Both address whether the State can challenge an impermissibly short period of postrelease supervision after a criminal defendant's probation has been revoked. Postrelease supervision requires defendants to report to parole officers and refrain from specific activities considered detrimental to their reintegration into society after serving prison sentences for their crimes. The period of supervision can range from 12 months to the defendant's life, depending on the crime of conviction.

In *Sandoval*, the State was permitted to challenge the period of postrelease supervision after the defendant's probation had been revoked and the district court effectively declined to modify the original sentence, including an impermissibly short postrelease supervision. Conversely, in *Roth*, the State could not attack an otherwise too short a period of postrelease supervision when the district court reduced the defendant's prison sentence upon revoking his probation. So *Roth*, rather than *Sandoval*, is procedurally analogous to Brown's circumstance, since the district court shortened his sentence for the robbery conviction.

But applying *Roth* and *Sandoval* here poses a confounding exercise for several reasons. Neither case offered a clear majority opinion expressing a unified rationale for the outcome. Thus, *Roth* produced a per curiam lead opinion, reflecting the views of two justices; a brief concurring opinion of two justices employing an arguably broader rationale; and a short dissent drawing the support of the remaining three justices. Roth

10

was convicted of one count of aggravated sexual battery, a crime requiring lifetime postrelease supervision, and two counts of aggravated burglary. At the original sentencing, the district court ordered Roth to serve a controlling prison term of 102 months, reflecting consecutive sentences, with postrelease supervision for 24 months and placed him on probation for 60 months. Roth should have been sentenced to lifetime postrelease supervision.

The district court later revoked Roth's probation and shortened the overall prison term by ordering Roth to serve the sentences concurrently. The district court again placed Roth on postrelease supervision for 24 months, apparently believing that to be the statutorily authorized period. The State then challenged the duration of the post release supervision as an illegal sentence. Four justices rejected the State's position on the grounds the modified sentence—including the otherwise impermissibly short period of postrelease supervision—amounted to a "lesser sentence" allowed upon a probation revocation under K.S.A. 2020 Supp. 22-3716(b). The "lesser sentence" provision in that subsection mirrors the language in K.S.A. 2020 Supp. 22-3716(c)(1)(C) applicable here. All three opinions in *Roth* expressly recognized the issue concerned the State's challenge to the district court's failure to impose a statutorily mandated period of postrelease supervision.

The issue here differs materially because it dictates the length of Brown's imprisonment and concomitant loss of liberty rather than the relatively mild impositions of postrelease supervision. (The impositions are significant, but they pale in comparison to being locked up for term measured in years.) Brown's criminal history has been erroneously overstated. If his 1998 Missouri robbery conviction is correctly scored as a nonperson felony, the modified 75-month prison sentence the district court imposed upon revoking his probation exceeds the permissible guidelines range of 53 to 60 months for the Kansas robbery. That sentence would require an upward durational departure the State neither sought nor the district court ordered.

11

It doesn't ineluctably follow that *Roth* and *Sandoval* would permit the district court to impose an illegally long prison sentence on Brown after revoking his probation simply because that sentence is shorter than the illegal sentence originally imposed on him. The court did not purport to consider, let alone decide, this set of circumstances in *Roth* and *Sandoval*. Incarceration impinges on a person's fundamental liberty interests. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government."); *Foucha v. Louisiana*, 504 U.S. 71, 78-80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (government effort to involuntarily commit individual because of mental illness implicates substantive liberty rights and triggers procedural due process protections); *State v. Gonzalez*, 57 Kan. App. 2d 618, 624, 457 P.3d 938 (2019). Neither *Roth* nor *Sandoval* speaks to the arguably excessive and, thus, illegal incarceration of criminal defendants following and based on probation revocation.

Likewise, sentencing statutes, such as K.S.A. 2020 Supp. 22-3716(c), must bear at least some rational relationship to cognizable government interests to the extent they impose different burdens on otherwise comparable defendants. See *Chapman v. United States*, 500 U.S. 453, 465, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991); *United States v. Titley*, 770 F.3d 1357, 1359 n.3 (10th Cir. 2014). As the *Chapman* Court explained, upon a criminal conviction, a person may be punished as required by statute and consistent with constitutionally mandated equal protection "so long as the penalty is not based on an arbitrary distinction." 500 U.S. at 465. A statute that abides arbitrary punishment violates a criminal defendant's right to equal protection secured in the Fourteenth Amendment to the United States Constitution. We struggle to find some rational policy objective in allowing criminal defendants to challenge illegal terms of incarceration upon sentencing but precluding at least some of them from doing so after their probation has been revoked.

For example, if the district court sentenced John Doe for robbery and relied on a 1998 Missouri robbery conviction as one of two person felonies to impose a 75-month sentence on him, ostensibly reflecting a downward durational departure from the presumptive guidelines range of 114 to 128 months, Doe could challenge that sentence as illegal on the grounds the past conviction should have been scored as a nonperson felony, making the proper guidelines range 53 to 60 months. As Judge Powell construes *Roth* and *Sandoval*, those cases foreclose Brown from making the same challenge here only because the district court reduced his otherwise illegal sentence of 128 months to 75 months after revoking his probation, even though the sentence still exceeds the controlling guidelines range. There seems to be no more than an arbitrary distinction between Doe and Brown, implicating constitutional guarantees of equal protection. And the result conflicts with the basic policy objective behind the sentencing guidelines: Similarly situated defendants should receive substantially similar punishments for the same crime. See *State v. Huerta*, 291 Kan. 831, 836, 247 P.3d 1043 (2011). Arbitrary government action that materially compromises a fundamental right also implicates constitutionally protected substantive due process protections. See *Foucha*, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

A cognate reading of the statutory language in K.S.A. 2020 Supp. 22-3716(c)(1)(C) suggests the "lesser sentence" provision refers to a sentence less onerous than the original sentence if—but only if—the original sentence was itself lawful. That would likely avert the potential constitutional problems we have mentioned. Moreover, it would avoid an anomalous result in which Brown (and like defendants) would be worse off because a district court ostensibly sought to extend leniency in the form of a reduced prison term—a decision that actually would thwart an otherwise meritorious challenge to that term as illegal because of an overstated criminal history.

We do not presume to decide today that *Roth* and *Sandoval* can or cannot be extended to preclude Brown's claim for relief in this appeal. Precisely because the issue has not been raised and debated by the parties, we withhold any judgment. Our discussion simply illustrates the outcome is less than obvious, and its resolution would undoubtedly benefit from a full airing that has yet to take place. See *United States v. Cronic*, 466 U.S. 648, 655-56, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ("'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.'") (quoting *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 [1975]); *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 382-83, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980) ("The clash of adverse parties 'sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'"). Because the State has not engaged the debate, we prefer to leave the entire matter for another day in another case.

*Conclusion*

Brown's sentences for criminal threat and the robbery are vacated, and the cases are remanded to the district court for resentencing in a manner consistent with this opinion, including scoring the 1998 Missouri robbery conviction as a nonperson felony.

Sentences vacated and case remanded with directions.

* * *

POWELL, J. (concurring in part and dissenting in part): I join the majority's opinion in full except for its conclusion that Brown's modified sentence of 75 months for robbery is illegal because the district court incorrectly scored his 1998 Missouri robbery conviction.

14

Brown's original sentence in 17CR773 for robbery was for 128 months in prison, but the district court modified it downwards to 75 months upon its revocation of Brown's probation. According to K.S.A. 2020 Supp. 22-3716(c)(1)(C), the district court has the authority to impose "any lesser sentence" upon a revocation of an offender's probation. The phrase "any lesser sentence" is not limited to a sentence that may have been originally imposed but includes any sentence that is less than that originally imposed. *State v. McKnight*, 292 Kan. 776, 782, 257 P.3d 339 (2011). As a result, our Supreme Court has held that any new lesser sentence imposed by the district court after a probation revocation is not subject to an illegal sentence challenge under K.S.A. 22-3504, even if a portion of the original sentence was illegal. *State v. Roth*, 308 Kan 970, 971-72, 424 P.3d 529 (2018); *State v. Sandoval*, 308 Kan. 960, 960, 425 P.3d 365 (2018). Thus, any illegality in Brown's original sentence no longer existed once the district court imposed a modified sentence. Admittedly, the State never raised this objection, but I cannot join the majority's declaration that Brown's modified sentence is illegal and order a correction of this sentence. We lack the power to do so because Brown's new sentence is not subject to an illegal sentence challenge. See *Roth*, 308 Kan. at 972; *Sandoval*, 308 Kan. at 960.