No. 48,314

The State of Kansas, *Appellee,* v. Robert W. Aldershof, *Appellant.*

(556 P. 2d 371)

Opinion filed November 6, 1976.

*Hal H. Lockett,* of Wichita, argued the cause, and was on the brief for the appellant.

*Christopher Randall,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Robert W. Aldershof, was convicted of the offense of robbery. (K. S. A. 21-3426, Weeks 1974.) The facts pertaining to the offense were virtually undisputed and were essentially as follows: On the evening of August 5, 1974, the defendant Aldershof along with two friends, Eddy Kennedy and Ron Gudenkauf, went to the Bear Tree Inn, a drinking establishment in Wichita. During the course of the evening all three men imbibed heavily. While at the tavern the defendant approached a friend, James Truesdell, and indicated that he was short of money and would like to borrow some. Truesdell replied that he was broke and could not make a loan. Truesdell later told a Wichita police officer that the defendant had told him that he was going to get some by any means possible. During the course of the evening two young women, Christy Razook and her sister-in-law,

Debbie Razook, arrived at the tavern, sat down at a booth, and each ordered a drink. Shortly thereafter there was a power failure which caused the lights to go out. The only light in the tavern was that from one flashlight. During the outage three men came over to the table occupied by the Razook women without invitation and attempted to make conversation. Debbie asked the three men to leave, saying that they were just there to drink a beer and did not want any hassle. Because of the poor lighting the women were unable to see the faces of the three men. The three men left.

At about this time Debbie asked Christy Razook to watch her purse while she went to the restroom. Debbie's purse was left on the table directly across from Christy. The lights were still out and Debbie had a difficult time finding her way to the restroom. While she was gone, an unidentified man came to the booth and snatched Debbie's purse from the table and Christy's purse from her lap. The man quickly left the tavern. Christy ran after him. Michael Dahlem, a friend of the defendant, testified that he saw defendant heading for the door with Christy right behind him. Christy Razook testified that outside the tavern in the parking lot she managed to grab the man on the back of his shirt. He turned and struck her in the eye with his hand. The man then got into Kennedy's vehicle which left the scene. Kennedy testified that he and the defendant and Gudenkauf proceeded to another tavern, stayed there awhile, and then the defendant Aldershof was taken home. Following this Kennedy and Gudenkauf went to Derby, Kansas, where Kennedy's vehicle was involved in an accident. The vehicle was impounded and searched for objects. The police found Debbie's checkbook in the jeep. The checkbook had been in her purse at the time it was stolen earlier that evening. The following day the two purses were recovered at the defendant's house. Defendant was later charged with robbery. Defendant was tried and convicted by a jury and has appealed to this court.

The defendant has raised seven points on this appeal. Points one through four essentially present the same basic issue: Whether there was substantial evidence to support the jury's verdict of guilty of robbery. The defendant contends in substance that since the undisputed evidence shows that no force or threat was used in the taking of the purses and that the purses were taken by stealth, the crime was at most theft, not robbery. The defendant maintains that any force or violence in the case came after the

purses had already been stolen when the struggle between Christy Razook and the thief occurred in the parking lot for recovery of the purses. It is the position of the state that to prove robbery it is sufficient if the force used is contemporaneous with the taking of the property. Here, the prosecutor argues, the taking was still in progress when the struggle occurred between the victim and her assailant in the parking lot. Essentially it is the state's position that the taking of the two purses in the present case was still underway when the violence occurred. Hence the defendant was guilty of robbery.

The contentions of the parties require us to examine carefully the inherent nature of robbery as distinguished from theft or larceny. K. S. A. 21-3426 defines robbery as "the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." To establish the charge of robbery the state must prove that there was a *taking* of property from the person or presence of the victim and that *such taking* was either by threat of bodily harm or by force. The crime of theft is provided for in K. S. A. 21-3701. Section (*a*) of 21-3701 states in substance that theft is the obtaining or exerting of unauthorized control over property with intent to deprive the owner permanently of the possession, use, or benefit of his property. This state has long recognized that robbery and theft (formerly termed larceny) are kindred crimes. In *State v. Segermond,* 40 Kan. 107, 108, 19 Pac. 370, this court accepted the definition of robbery as being "larceny committed by violence of the person of one put in fear." In *Guffey v. Casualty Co.,* 109 Kan. 61, 197 Pac. 1098, Syl. 2, the court held that: "Robbery includes larceny and may be deemed forcible larceny, and in order to constitute it there must be an intent to deprive the owner of the property taken, not temporarily, but permanently." In *State v. Russell,* 217 Kan. 481, 536 P. 2d 1392, we held that robbery and theft are kindred crimes and the elements constituting theft are necessarily included in robbery.

For centuries the rule followed in England and later in the United States has been that in order for the defendant to be guilty of robbery it is essential that the prosecution prove that the defendant took the property by means of force or violence or by putting the victim in fear. The force or intimidation employed is the gist of the offense. Furthermore, the general rule is that the violence or intimidation must precede or be concomitant or contemporaneous with the taking. Violence or intimidation by the thief *sub-*

*sequent to the taking* will not render the act robbery. In 4 Bl. Comm. 243, Blackstone, to emphasize that for robbery the larceny must be accomplished by violence or intimidation, said:

". . . the taking must be by force, or a previous putting in fear, which makes the violation of the person more atrocious than privately stealing . . . For if one privately steals sixpence from the person of another, and afterward keeps it by putting him in fear, this is no robbery, for the fear is subsequent. . . ."

The general rule is recognized with many cases cited in 77 C. J. S. Robbery § 11 and 67 Am Jur 2d, Robbery, § 26. A comprehensive annotation on the subject may be found in 58 A. L. R. 656.

In *State v. Miller*, 53 Kan. 324, 36 Pac. 751, this court stated the general rule in Syl. 1 in the following language:

"To constitute the crime of robbery by forcibly taking money from the person of its owner, it is not necessary that violence to the person of the owner should precede the taking of the money; it is sufficient if it be contemporaneous with the taking."

In *Miller* the factual circumstances were stated in the opinion to be as follows:

" 'That on the evening of the 26th day of August, 1893, the defendant came into the laundry of the complaining witness, at about 10 o'clock at night, to get a shirt he had left there, and laid the check for the shirt down on the counter, which the complaining witness took up, and got the shirt, and laid it on the counter; that the defendant then took out a quarter and laid it on the counter; that the complaining witness took the quarter and put it in the money drawer, and took out 5 cents in change, and laid it on the counter; that the defendant then reached over the counter and grabbed the money of the complaining witness in the drawer; that thereupon the complaining witness caught his hand containing the money, and then the defendant said, "Let go of me, you son of a bitch;" and the defendant then cut the complaining witness on the hand with a knife; that the complaining witness then let go of him, and the defendant ran to get out of the door; that the complaining witness ran around the counter and caught the defendant by the coat as he went out of the door, and then the defendant turned and cut the complaining witness with a knife across here [the complaining witness indicating his abdomen]; that the complaining witness let go of him, and that the defendant then ran down the alley with the money.' " (p. 325.)

The jury convicted the defendant of robbery and the conviction was affirmed. On appeal the defendant argued that he was at most guilty of larceny, not robbery, because the violence used by the defendant was merely for the purpose of breaking away from the complaining witness, and that, if the defendant took the money, he had it in his possession before any struggle took place. This court rejected the contention stating that the violence to the person and

the taking may be contemporaneous. The court, however, pointed out in the opinion that they were not inclined to question the correctness of those cases which hold that robbery is not committed where the thief gains peaceable possession of the property, and uses no violence except to resist arrest or to effect his escape. In *Miller* the court concluded from the statement of facts contained in the bill of exceptions that it could not say as a matter of law that the defendant had obtained full possession of the money from the victim before using violence to the victim since it did not appear that the defendant had withdrawn his hand from the cash drawer. The court further recognized that nice questions may and do arise as to just when the possession of the owner of articles not attached to his person, but under his immediate charge and control, is divested, and it may well be doubted whether a thief can be said to have taken peaceable possession of money or other thing of value in the presence of the owner, when the taking is instantly resisted by the owner, before the thief is able to remove it from his premises or from his immediate presence. Under the factual circumstances presented in *Miller* the court concluded that the instructions given by the trial court were correct in that they fairly required the jury to find that the defendant must have first gained possession of the money taken out from the drawer by violence to the person of the prosecuting witness.

In Wharton's Criminal Law, 12th Ed., Robbery, § 559, the rule is stated that when the defendant is able to take possession of the property without the use of force or fear but then employs force or fear in order to keep the property or to effect his escape, it is generally held that his offense is not robbery. The author points out that the conflict in the decisions of some states arises because of the uncertainty as to when the taking is completed. Some cases have held that the snatching of property from the presence of an owner or his agent and a use of force or intimidation in carrying it away constitutes robbery, usually on the theory that the taking was not effected until the property was carried away, and any violence used in making an escape after the snatching was in effect violence in the taking. It is suggested that the problem raised by these cases has been met in some jurisdictions by statutes which define robbery so as to include the use of force to resist the retaking of the property.

California has adopted a minority position that any force used

prior to the escape of the robber to a place of temporary safety elevates the crime from theft to robbery. (*People v. Anderson,* 64 C. 2d 633, 51 Cal. Rptr. 238, 414 P. 2d 366; *People v. Laursen,* 8 C. 3d 192, 104 Cal. Rptr. 425, 501 P. 2d 1145; *People v. Carroll,* 1 C. 3d 581, 83 Cal. Rptr. 176, 463 P. 2d 400; *People v. Milan,* 9 C. 3d 185, 107 Cal. Rptr. 68, 507 P. 2d 956.) Recent cases from other jurisdictions hold that the element of force or intimidation is an essential ingredient of the offense of robbery, and no violence or excitation of fear resorted to merely for the purpose of retaining possession already acquired, or to effect escape, will, in point of time, supply that element. (*Mason v. Commonwealth,* 200 Va. 253, 105 S. E. 2d 149; *Hicks v. State,* 232 Ga. 393, 207 S. E. 2d 30; *Gray v. State,* 10 Md. App. 478, 271 A. 2d 390; *State v. Adams,* [Mo.] 406 S. W. 2d 608.) Illinois has taken the position that to sustain a conviction for robbery the force or the threat of force must precede or be contemporaneous with the taking of the property. Nevertheless, although the taking of the property may be peaceful, the departure with the property may be forceful and thus constitute robbery. (*People v. Heller,* 131 Ill. App. 2d 799, 267 N. E. 2d 685.) In *Heller* the court held that the use of a dangerous weapon at any point of a robbery, so long as it can reasonably be said to be part of a single occurrence or incident—or put another way, a part of the "res gestae of the crime"—will constitute armed robbery.

We are inclined to follow the general rule recognized in *State v. Miller,* supra, that to constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape. We believe that the test should be whether or not the taking of the property has been completed at the time the force or threat is used by the defendant. This must of necessity be determined from the factual circumstances presented in the particular case before the court.

We have concluded on the basis of the factual circumstances shown in the record now before us that the taking of the property had been completed when the thief snatched the purses and left the premises of the tavern. Beyond question the person who took the purses had obtained control over the purses with the intent to deprive the owner permanently of their possession. As pointed out

in *State v. Knowles*, 209 Kan. 676, 678, 498 P. 2d 40, theft under our present statute, unlike "larceny" under the old statute, requires no asportation to complete the crime. All that is required is the unauthorized control of the property, coupled with the intent to deprive the owner permanently of his possession. When the thief left the tavern with the purses under his control, in our judgment the taking had been completed and any violence thereafter used by the thief in an attempt to prevent the owner from regaining possession of the same could not convert the theft into a robbery, although it may well have been the basis for a charge of battery under K. S. A. 21-3412. In reaching this conclusion we have noted the comments of the trial judge at the time of the hearing on defendant's motion for a new trial. He stated on the record as follows:

". . . There was no weapon in evidence that was used and the only force was after the purse was taken when the little girl testified she'd tried to apprehend the person that took her purse and got knocked down. But there was no force at the time of the alleged robbery. . . ."

K. S. A. 21-3426 declares robbery to be a class C felony. It contemplates that the defendant have such a malignancy of mind as to cause him intentionally and willfully to take property from the person or presence of another by force or threat of bodily harm. In our judgment the offense of robbery should not be extended to situations where a purse snatcher grabs a purse without violence or injury to the person of the owner, leaves the scene, and then later uses his fist to effect his escape. Here the person who snatched the purses was a sneak thief. He cannot properly be placed in the category of a robber or a highwayman. Since the jury found the defendant guilty of robbery, the case must be reversed and remanded to the trial court with instructions to grant the defendant a new trial. At the close of the state's case the trial court should have withdrawn the charge of robbery from the jury and submitted to the jury the issue of defendant's guilt or innocence of the lesser included offense of theft under K. S. A. 21-3701.

The defendant's fifth point on the appeal is that the trial court erred in failing to declare a mistrial because the state repeatedly brought before the jury hearsay evidence. The trial court in each instance sustained the defendant's objection and excluded the evidence from the jury's consideration. Since a new trial will be had in this case, we do not deem it necessary to consider this point further. Suffice it to say, we have confidence that the trial court

will take care of these matters on the retrial of this case should they arise.

The defendant's sixth point concerns the trial court's giving to the jury over objection an instruction on circumstantial evidence. We have stated in our recent decisions that an instruction on circumstantial evidence should not be given. (*State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728.) Since the defendant has been granted a new trial, we assume that the trial judge will follow the law when a new trial is had.

The defendant's final point is that the trial court erred in not giving an instruction on the lesser included offense of theft. In view of our disposition of the case a discussion of this point is not warranted.

For the reasons set forth above the judgment of the district court is reversed and remanded with directions to grant the defendant a new trial on the lesser included offense of theft in accordance with the views expressed in this opinion.