(24 P.3d 193)

No. 85,279

State of Kansas, *Appellee*, v. Jesse L. Bosby, *Appellant*.

Opinion filed May 25, 2001.

*Reid T. Nelson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Sheryl L. Lidtke*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before Pierron, P.J., Green and Beier, JJ.

Pierron, J.: Jessie L. Bosby appeals his convictions for aggravated robbery, burglary of a building that is not a dwelling, automobile burglary, theft, and criminal damage to property. Bosby received a controlling term of 95 months' incarceration. He argues there was insufficient evidence to support his conviction for aggravated robbery. We affirm.

Bosby and his codefendant, Nathaniel Jones, stole a pickup truck. They drove past the residence of Rosellen Barry and noticed that the van normally parked in the driveway was gone and that

the garage had no door. Bosby saw a riding lawn mower in the garage and decided it was a "perfect day to get the mower."

Bosby backed the truck up to the garage. Jones got the lawn mower while Bosby lowered the hydraulic lift on the back of the truck. They put the lawn mower on the hydraulic lift, loaded it on the truck bed, and shut the tailgate. Bosby said he saw Barry approaching after he was already in the driver's seat trying to release the emergency brake to get the truck moving. Bosby testified, "We were already in the process of leaving when she came out." The emergency brake handle was broken off and only wires remained. Bosby poked his finger on the wires and it began to bleed. Bosby said Barry began hitting him across his back through the open window of the truck. He said that he tried to get the truck moving with the emergency brake on, but the truck died when he let the clutch out. Bosby testified that he fumbled with the wires in the broken steering column, but the blood from his finger made it hard to hold the wires.

Bosby testified that as he attempted to start the truck again, he felt somebody on his back, but did not know if it was Barry or Jones. He said he did not witness any confrontation between Barry and Jones. Bosby finally got the truck started and "bounced" it onto Leavenworth Road. However, the truck died and would not start. Bosby was able to release the emergency brake and the truck coasted down the hill and came to a stop. Bosby and Jones unloaded the lawn mower and hid it in the woods, intending to come back for it later. They were apprehended shortly thereafter.

Barry had a different version of the facts. She was cooking supper in her kitchen when she saw two men loading her lawn mower onto a flatbed truck in her driveway. Thinking the men had made a mistake and that they should be loading the neighbor's mower for repairs, Barry went outside to tell them of their mistake. Barry said the men had already loaded a push mower and the riding lawn mower was on the lift being loaded into the truck. Barry said both lawn mowers were in her garage before the men took them, and the garage did not have a door because it was being replaced.

Barry testified that when she came outside, Bosby headed for the front of the truck. As she approached, Jones quickly pushed

the lawn mower onto the truck and got into the passenger side. Barry said the truck was not running when she first went outside. She testified the driver's side door was open and she stood in the doorway to tell them they had the wrong lawn mower. Barry saw Bosby messing with the steering column and she realized they were stealing the lawn mowers. She heard Bosby say, "Damn, we're in trouble now."

While Bosby leaned forward to start the truck, Barry said Jones hit her in the face. She fell to the ground and Jones came out of the truck, landed on top of her, and tried to hit her in the face, but she blocked his punches with her arm. Bosby finally started the truck again and Jones jumped back into the truck. The two headed down the driveway towards the street. Barry said she grabbed her child's roller blade skate and threw it at the truck, and her son shot paint balls at the truck. Barry immediately called 911.

The jury convicted Bosby of two crimes involving Barry's lawn mower—aggravated robbery and burglary of a building that is not a dwelling, and three crimes involving the stolen truck—automobile burglary, theft, and criminal damage to property.

Bosby argues the evidence was insufficient to support a conviction for aggravated robbery, as they allegedly did not use force to take the property. He contends the force was used after the taking was completed and that a robbery was not committed.

Our standard of review is to interpret the aggravated robbery statute, K.S.A. 21-3427, and determine if the facts in this case constitute that crime as a matter of law. We review the facts in the light most favorable to the prosecution. An appellate court's review of conclusions of law is unlimited, similar to our review when interpreting a statute. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993).

Bosby contends the evidence shows he obtained peaceable possession of Barry's lawn mower and he used no force during the theft. He contends any force used by Jones was subsequent to taking of the property and used only to effectuate the escape. At most, Bosby argues his acts constituted the separate offense of theft and a charge of aggravated battery against Jones. Thus, he requests we reverse the aggravated robbery conviction.

The State argues the taking of the lawn mowers from Barry's presence was not complete until after force was applied by Jones. The State maintains the physical blows to Barry constituted the force the defendants decided to use in order to complete their taking of the lawn mowers from Barry's presence.

The issue herein involves the difference between robbery and theft. The parties support their analysis from the same general set of cases.

Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm on any person in the course of the robbery. K.S.A. 21-3427. Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person. K.S.A. 21-3426. To establish the charge of robbery, the State must prove there was a taking of the property from the person or presence of the victim and that such taking was either by threat of bodily harm or by force.

The court in *State v. Miller*, 53 Kan. 324, 36 Pac. 751 (1894), considered whether the force required in a robbery must precede the taking of the property. The facts were that Miller went into a laundry to pick up a shirt. When the proprietor opened the cash drawer, Miller grabbed some money. The proprietor caught Miller's hand while it was still in the drawer and released it only when Miller cut the proprietor's hand with a knife. Miller ran for the door but was caught by the victim, who released his hold only after being stabbed in the abdomen.

On appeal, Miller argued that the violence was merely for the purpose of breaking away from the victim and that, if he took the money, he had it in his possession before any violence occurred. The *Miller* court disagreed and adopted the general rule that to constitute the crime of robbery, it is sufficient that the violence to the person and the taking be contemporaneous. Under the facts, the court concluded Miller had not obtained complete possession of the money before using the violence on the proprietor. The court noted there was evidence Miller cut the victim's hand in order to remove his own hand containing the money from the cash drawer. The court stated:

"Nice questions may and do arise as to just when the possession of the owner of articles not attached to his person, but under his immediate charge and control, is divested, and it may well be doubted whether a thief can be said to have taken peaceable possession of money or other thing of value in the presence of the owner, when the taking is instantly resisted by the owner, before the thief is able to remove it from his premises or from his immediate presence." 53 Kan. at 328.

In *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976), two women were sitting in a booth in a tavern. Lighting was poor by virtue of a power outage. While one of the women was gone, Aldershof went to the booth and grabbed both the absent woman's purse from the table and the other woman's purse from her lap. The woman at the booth pursued Aldershof to the parking lot and grabbed his shirt. He turned, hit her in the eye, and fled. He was convicted of robbery.

On appeal, Aldershof argued that the evidence showed no force or threat during the taking of the purses and that the purses were taken by stealth; therefore, the crime was a theft, not a robbery. The State argued the crime was robbery as the taking was still in progress when the victim was hit in the parking lot. The *Aldershof* court discussed the law of theft and robbery:

"We are inclined to follow the general rule recognized in *State v. Miller*, supra, that to constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape. We believe that the test should be whether or not the taking of the property has been completed at the time the force or threat is used by the defendant. This must of necessity be determined from the factual circumstances presented in the particular case before the court." 220 Kan. at 803.

In *Aldershof*, the taking of the purses had been completed when the thief snatched the purses and left the premises of the tavern. Any violence occurring after the thief left the tavern with the purses under his control "could not convert the theft into a robbery, although it may well have been the basis for a charge of battery under K.S.A. 21-3412." 220 Kan. at 804.

In *State v. Long*, 234 Kan. 580, 675 P.2d 832 (1984), Long had entered a sale building where Wolf sold milk. The building was

open to the public with customers helping themselves to the milk in the display case and dropping payment into a locked, slotted money box mounted on a wall. Wolf was not in the sales room but saw Long drive up and park. She went into the sale building to tell him more milk would be available soon. When Wolf entered the room, she observed Long crouched in front of the money box, which had been pried open. Long had his hands in his pockets and Wolf observed a dollar bill on the floor beneath the money box. Wolf positioned herself in the doorway to prevent Long from leaving. She asked Long twice what he was doing, but he made no response. Long walked toward Wolf, shoved her arm out of the way, forced himself by her, and drove off in his car. Long was convicted of robbery.

On appeal, Long argued that the force used against Wolf occurred after the taking to effect his escape and therefore was not sufficient to constitute a taking by force as required by the robbery statute. We agreed in *State v. Long*, 8 Kan. App. 2d 733, 667 P.2d 890 (1983), but the Kansas Supreme Court reversed. Applying the *Miller* rule, the *Long* court held the ultimate question was whether the taking of the money from the money box was completed prior to the appellant's exit from the sale building. Acknowledging that "[n]o established set of guidelines exists which can be readily applied for a quick and easy answer to this question," the court stated:

"Prior Kansas cases are not in accord with one another and as such do not provide much assistance in determining when a taking is completed. Some of these cases imply a taking is not complete until the property has been removed from the premises of the owner, whereas others indicate the taking is accomplished at the moment the thief, with the intent to steal, removes the property from its customary location." 234 Kan. at 583.

After reviewing some cases involving issues of whether the appropriate crime was theft or attempted theft, the *Long* court stated:

"As these cases demonstrate, inherent difficulties exist in determining when possession attaches to constitute a completed taking for a robbery conviction under K.S.A. 21-3426. Commission of the crime of robbery is complete when the robber takes possession of the property, as the element of asportation is no longer required to complete the crimes of theft or robbery. See, *e.g., State v. Knowles*, 209 Kan. at 678; *State v. Aldershof*, 220 Kan. at 804. The defendant takes possession of the property of another when he exercises dominion and control over

the property. 4 Wharton's Criminal Law 472 (14th ed. 1981). Earlier cases have recognized the term 'possession,' as it relates to theft or possession of stolen property, imports more than an innocent handling of property; the term denotes control, or the right to exercise control and dominion, over the property. *State v. Knowles*, 209 Kan. at 678; *State v. Brown*, 203 Kan. 884, 885-86, 457 P.2d 130 (1969). See also *State v. Porter*, 201 Kan. 778, 781, 443 P.2d 360 (1968), *cert. denied* 393 U.S. 1108 (1969); *State v. Phinis*, 199 Kan. 472, 430 P.2d 251, [*overruled on other grounds State v. Milow*, 199 Kan. 576, 433 P.2d 538] (1967). 52A C.J.S., Larceny 6, states:

'[I]n order to constitute a taking the prospective thief must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired adverse to the rights of the owner therein.

. . . .

'If the possession of the would-be taker is imperfect in any degree, or if his control of the thing desired is qualified by any circumstance, however slight, the taking is incomplete and the act is only an attempt.' " 234 Kan. at 585.

Upon application of these rules and cases to the facts, the *Long* court concluded that "a thief does not obtain the complete, independent and absolute possession and control of money or property adverse to the.rights of the owner where the taking is immediately resisted by the owner before the thief can remove it from the premises or from the owner's presence." 234 Kan. at 586. The court concluded Long did not obtain actual possession of the money and the taking was not completed until he by force overcame Wolf's efforts to stop him from making his exit from the sale room. 234 Kan. at 586-87.

In *State v. Dean*, 250 Kan. 257, 824 P.2d 978 (1992), Dean drove to a full-service service station and asked the attendant to pump gas into his vehicle. When the attendant asked for payment, Dean made a gesture under his coat jacket which made the attendant believe Dean had a gun. The attendant jumped back and Dean drove away. The aggravated robbery charge was dismissed before trial. On appeal, the court considered whether Dean's ordering the pumping of gasoline prior to payment and immediately leaving the presence of the owner without payment by the use of threat or force constituted robbery or merely theft. The *Dean* court applied the following rule:

"To constitute the crime of robbery, it is necessary that the violence to the owner of property must either precede or be contemporaneous with the taking

of the property. Robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape." 250 Kan. 257, Syl. ¶ 2.

After reviewing *Miller*, *Aldershof*, and *Long*, the *Dean* court concluded that Dean had not left the premises or even attempted to drive away before he used force. He made his threat to prevent resistance to the taking and not as a means of escape and, therefore, the facts supported the charge of aggravated robbery. The dismissal was reversed, and the case was remanded for further proceedings.

Commission of robbery is complete when the robber takes possession of property; the element of asportation is not required to complete theft or robbery. See K.S.A. 21-3426; *State v. Valdez*, 266 Kan. 774, 785, 977 P.2d 242 (1999). The test of whether a robbery has occurred is whether the taking of the property has been completed at the time the force or threat is used by the defendant. *Aldershof*, 220 Kan. at 803. The court in *Valdez* stated: "In order to constitute a taking, the prospective robber must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired adverse to the rights of the owner therein." 266 Kan. at 786.

As demonstrated by the discussion above, cases of this nature are very fact sensitive. "The test is whether or not the taking of the property has been completed at the time the force or threat is used by the defendant, which must be determined from the factual circumstances in each case." *Aldershof*, 220 Kan. 798, Syl. ¶ 2.

In the present case, under whichever factual scenario is believed, a robbery was committed. Bosby and Jones had not made good their escape from Barry's property when she either attacked them or they struck her preemptively. They used force to complete their taking possession of the property and removing it from the owner's presence and inflicted bodily harm in the process. This constituted an aggravated robbery. See Annot., 93 A.L.R.3d 643, 647.

Affirmed.