NOT DESIGNATED FOR PUBLICATION

No. 115,647

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEDRICK LEAKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed April 28, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kendra Lewison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*: Dedrick Leaks appeals from his conviction by a jury of aggravated robbery. On appeal, he argues that the evidence was insufficient to establish aggravated robbery and that the trial court abused its discretion by denying his motion to continue the trial.

We find no error and affirm the conviction of aggravated robbery.

1

*Factual and Procedural Background*

On September 13, 2014, Cain McEwen went to Manhattan, Kansas, to visit Derek Soucie. They went to a bar in Aggieville, where McEwen drank 9-10 beers, and Soucie drank 10-15 beers. At 2 a.m., when the bar closed, McEwen and Soucie were separated while the crowd was pushed out of the door. McEwen was walking to the parking lot and texting on his phone. As he was walking, "[s]omebody invaded my personal space in front of me and kind of approached me." A person unknown to McEwen, who police later identified as Dedrick Leaks, demanded McEwen's phone. When McEwen refused, the man "snatched" the phone out of McEwen's hand. McEwen demanded his phone back, to which the man responded, "What are you going to do about it?" Three other men then surrounded McEwen. McEwen was hit from behind by one man and then punched in the face by Leaks. The men drug McEwen to the ground and punched and kicked him.

Soucie testified that as he was walking toward McEwen in the parking lot, he saw a bunch of men approaching McEwen. Soucie saw Leaks grab McEwen's phone and the rest of the men surrounded him. Shortly thereafter, the men began to shove McEwen, and Leaks backed away from McEwen a couple of feet. Soucie ran toward the scuffle and tackled Leaks, attempting to get McEwen's phone back. As Soucie was fighting with Leaks, he saw the other men kicking McEwen who was on the ground. Then the men began to kick Soucie in the face and sides. Soucie believes he lost consciousness for a short time. The men ran away after the scuffle.

Officer Robert Learned of the Riley County Police Department was the first officer to arrive at the scene. He testified that McEwen was bleeding and appeared "roughed up." Although McEwen was intoxicated and slurring his words, Officer Learned believed he was "coherent enough to realize what's going on." Typical of someone who has recently been in a physical altercation, McEwen's statement to Officer

2

Learned was sporadic and not presented chronologically. Officer Matt Pfrang of the Riley County Police Department, who arrived at the scene at about 2:15 or 2:20 a.m., noticed that Soucie had blood on his face and was fairly intoxicated and angry about the incident. McEwen had blood on his shirt and face, was "amped up," and was a little intoxicated. At the scene, McEwen and Soucie told Officer Pfrang the same story they testified to at trial. However, in talking to Officer Pfrang, Soucie said that the group of men had begun to walk away from McEwen when Soucie tackled Leaks.

Using his Find My iPhone app the next morning, McEwen discovered his phone was at a Junction City address and informed the police. Detective Brian Johnson of the Riley County Police Department went to Junction City to find the phone and any suspects associated with it. Trevion Malone, Leaks' cousin, answered the door at the address the app had provided and invited the officers inside where a group of men, including Leaks, were congregated. Detective Johnson saw the missing iPhone on a coffee table near a person matching the description McEwen and Soucie had provided to the officers of the man who took McEwen's phone. Detective Johnson told the men present in the room that he had reason to believe McEwen's stolen cell phone was in the house. Leaks then picked up the iPhone and handed it to Detective Johnson.

Leaks went with Detective Johnson to the police station for an interview. In the taped interview, Leaks told Detective Johnson that he told his friends they should "do something." Leaks then stated he took McEwen's cell phone and punched McEwen and Soucie. Leaks said there had been no prior conflict with McEwen or Soucie. At the end of the interview, Leaks made a written statement: "I had walked up to the guy and took the phone and punch him in the face."

On September 15, 2014, Leaks was charged with aggravated robbery, a severity level 3 person felony. Leaks pled not guilty. At trial, Leaks testified that he had been in Manhattan to visit his cousin, Malone, and drank heavily that day. Leaks testified that he

and three other men were walking in Aggieville and bumped into some other guys—McEwen and Soucie. Leaks said he fell to the ground because he was tackled. When Leaks stood up and found his phone was no longer in his pocket, he picked up McEwen's phone from the ground, mistakenly thinking it was his own.

Leaks testified that when Detective Johnson arrived at Malone's house the next day looking for the phone, he felt he was not yet sober. In explaining some statements made in the interview with Detective Johnson, Leaks stated that when he told his friends he wanted to "do something," he meant he wanted to stay out past 2 a.m. to have fun. He said he did not clarify his intent to Detective Johnson because he was not thinking straight due to alcohol and lack of sleep. Detective Johnson testified, however, that he did not smell any alcohol on Leaks' breath nor did he notice any common signs of intoxication during the interview.

On January 21, 2016, after a 2-day trial, the jury convicted Leaks of aggravated robbery. After being granted a downward departure, Leaks was sentenced to 36 months in prison. Leaks appealed the court's adverse rulings.

*The evidence was sufficient to convict Leaks of aggravated robbery.*

Accepting McEwen and Soucie's story, Leaks argues he committed theft, if any crime at all, and not aggravated robbery because he obtained peaceable possession of the phone before the fight ensued. The State counters that possession is not complete, independent, and absolute where the owner resists before the thief can remove the item from the premises or owner's presence.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the

4

defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

To establish aggravated robbery, Instruction No. 4 required the State to prove:

". . . 2.  The taking was by force or by threat of bodily harm to Cain McEwen.

. . .

"In order to constitute a taking, the prospective robber must have obtained at some particular moment the complete, independent, and absolute possession and control of the property, adverse to the rights of the owner.

"To constitute the crime of robbery by forcibly taking property from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property, and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or effect his escape."

Theft, unlike aggravated robbery, does not require use of force or threat in accomplishing the taking. In determining whether aggravated robbery occurred, the test is whether the taking was "'completed at the time the force or threat is used by the defendant.'" *State v. Plummer*, 295 Kan. 156, 166, 283 P.3d 202 (2012) (quoting *State v. Aldershof*, 220 Kan. 798, 803, 556 P.2d 371 [1976]). The taking is incomplete when it "'is immediately resisted by the owner before the thief can remove [the property] from the

5

premises or the owner's presence.'" *State v. Brown*, 300 Kan. 542, 557, 331 P.3d 781 (2014) (quoting *State v. Long*, 234 Kan. 580, 586, 675 P.2d 832 [1984]).

Here, viewing the evidence in the light most favorable to the State, a reasonable jury could find Leaks had not yet completed taking McEwen's phone before using force and is thus guilty of aggravated battery beyond a reasonable doubt. McEwen immediately demanded his phone back from Leaks, showing his immediate resistance to the taking. When violence is used to neutralize the victim's probable retaliation to the taking, the violence is considered contemporary with the taking. See *State v. Dean*, 250 Kan. 257, 260, 824 P.2d 978 (1992) (The defendant was found to have committed aggravated robbery, not theft, when the victim had willingly pumped gas into the defendant's car before the defendant refused to pay and threatened the victim with a weapon. It was determined that the defendant had used the threat of violence "to neutralize [the victim] before he would have complete control of the gasoline."); see also *State v. Plummer,* 295 Kan. at 167-68.

Although Soucie thought Leaks was backing away from McEwen, Leaks admitted to having punched McEwen in the face. Leaks must have punched McEwen in the face prior to Soucie tackling Leaks because Leaks was preoccupied fighting Soucie after the tackle. Although Leaks already had the phone in hand, a reasonable jury could think his use of violence was contemporaneous with the taking.

The evidence was, therefore, sufficient for a rational jury to have found Leaks guilty of aggravated battery.

*The trial judge did not abuse his discretion by denying Leaks' motion for continuance.*

Leaks argues the district court committed reversible error when it denied his request for a continuance so that he could attempt to contact two potential witnesses. The

6

State responds that Leaks failed to proffer the content of the potential witnesses' testimony, either at trial or in a motion for new trial, so that prejudice cannot now be determined. Additionally, the State argues the two potential witnesses would likely assert their right to remain silent under the Fifth Amendment to the United States Constitution, Leaks had not taken any steps to subpoena the potential witnesses until 1 week before trial, and the witnesses likely would not show up to the trial.

Under K.S.A. 22-3401, a continuance may be granted for good cause shown.

> "When a continuance is requested to secure a witness during a trial, the district court considers (1) the possible prejudice to the defendant; (2) the diligence or lack thereof in attempting to secure the witness; (3) the materiality and importance of the probable testimony; and (4) the probability of the witness' appearance at a later date if the continuance is granted." *State v. Harwood*, No. 114,476, 2017 WL 945767, at *6 (Kan. App. 2017) (unpublished opinion) (citing *State v. Carter*, 284 Kan. 312, 319, 160 P.3d 457 [2007]).

The appellate court reviews the district court's decision for abuse of discretion. *State v. Lewis*, 299 Kan. 828, 846, 326 P.3d 387 (2014). A judicial action is an abuse of discretion if it "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Leaks was charged on September 15, 2014. He filed his motion for continuance on the morning of the trial, January 21, 2016, just before jury selection. He stated that James Walker and Lanorris Jenkins were witnesses to the incident giving rise to the trial, and he had received new contact information for the men. The prosecutor responded the two potential witnesses were known for at least 2-3 months and the State's attempts to contact these witnesses had proven fruitless. The State's investigator attempted to contact the potential witnesses through phone calls and Facebook messages, none of which were

answered. Leaks' attorney stated Walker and Jenkins might have tried to contact him recently but that the firm's voicemail system was currently inaccessible. The district court denied the motion for continuance, citing the court's interest in preventing further delay, because Leaks had nearly a year and a half to contact Walker and Jenkins.

Leaks and the State had been unable to contact the potential witnesses for an extended period of time. We are unable to determine the materiality and importance of the potential testimony because it was not proffered and preserved on the record. In the absence of such information, it would be reasonable to assume the potential witnesses were part of the incident who could assert their right not to testify under the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. The witnesses repeatedly avoided calls and Facebook messages and there is little, if anything, to support the contention that they would have attended the trial even had it been further delayed.

Under the totality of the circumstances, the district court did not abuse its discretion in denying Leaks' last-minute motion for continuance.

Affirmed.