NOT DESIGNATED FOR PUBLICATION

No. 113,906

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAQUANTRIUS JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed September 8, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

BUSER, J.: Daquantrius Johnson appeals his convictions after a jury found him guilty of aggravated burglary, robbery, and theft. On appeal, Johnson contends there was insufficient evidence presented at trial to find him guilty of robbery, that the district court erred in instructing the jury, and that the prosecutor committed error by misstating the evidence during closing argument. Johnson also contends that the district court erred by enhancing his sentence based upon his criminal history without first requiring the State to prove his prior convictions to a jury beyond a reasonable doubt. Because we find no reversible error, we affirm Johnson's convictions and sentence.

1

FACTS

On the night of December 29, 2013, Johnson, Keith Hickles, and Quanique Thomas-Hameen went to a Taco Bell in Wichita. While Thomas-Hameen went inside the restaurant to order food, Johnson and Hickles saw a pickup truck hit the drive-thru speaker box and come to a stop. Johnson ran to the pickup truck and saw that the driver— later identified as 43-year-old Danielle Zimmerman—appeared to be unconscious. Instead of helping Zimmerman, Johnson grabbed her hand and took the wedding ring off Zimmerman's finger. In addition, Johnson took Zimmerman's iPhone and her purse from the pickup. After taking the items from Zimmerman, Johnson, Hickles, and Thomas-Hameen drove away.

Several people came to Zimmerman's aid, including a Taco Bell employee who found her slumped over to the left side of her steering wheel. An off-duty nurse also assisted Zimmerman and found her to be unresponsive. Emergency personnel arrived at the scene and transported Zimmerman to the hospital where it was determined that she had suffered a brain aneurysm. The police called Zimmerman's husband of 21 years, and he noted that his wife's wedding ring, iPhone, and purse—containing about $150 cash, credit cards, a checkbook, and other personal items—were missing. Unfortunately, Zimmerman died at the hospital the following day.

After leaving the Taco Bell, Johnson, Hickles, and Thomas-Hameen rifled through Zimmerman's purse and removed several items. The three men eventually arrived at the house of Jessica Saenz. Upon arriving at her house, Johnson told Saenz that he had robbed a "[d]umb white bitch" who had "passed out behind the wheel." Johnson also showed Saenz a cell phone and two rings. We note from a photograph in the record on appeal that the ring stolen from Zimmerman consisted of both an engagement ring and a wedding band. Moreover, Johnson showed Zimmerman's credit cards to Saenz. At some point, the stolen credit cards and driver's license were placed in Saenz' trash can.

2

Several days later, Saenz informed the police regarding what had occurred. Shortly thereafter, the police arrested Johnson, Hickles, and Thomas-Hameen. The State charged Johnson with aggravated burglary, robbery, and theft. A jury ultimately found him guilty of each of the charges. The district court sentenced Johnson to a 136-month prison term with 36 months' postrelease supervision. Thereafter, Johnson timely filed this appeal.

ANALYSIS

*Sufficiency of Evidence*

On appeal, Johnson first contends there was insufficient evidence to convict him of robbery as defined in K.S.A. 2016 Supp. 21-5420(a). Specifically, Johnson argues that the required element of "force" was not satisfied because Zimmerman was evidently unconscious when he removed her wedding ring from her finger. When a criminal defendant challenges the sufficiency of evidence, we review all evidence in the light most favorable to the State. It is not our role to reweigh the evidence presented to the jury or to assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). Moreover, we are to uphold a conviction if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence presented. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

After the State rested, Johnson's counsel filed a motion for acquittal arguing that there was "no testimony that there was any sort of force exerted for the taking of the alleged ring." The State countered, arguing that there was testimony from Zimmerman's husband "that she never took the ring off, so it was on her hand." Furthermore, the State argued that Zimmerman "was a living, breathing person according to the testimony from the nurse at the time it was taken" and that "[s]ome degree of force would have been required" to take the wedding ring off Zimmerman's finger. The district court agreed with

3

the State and overruled Johnson's motion for acquittal, reasoning that "the question of any force as to . . . the robbery count is a factual question for which the jury must make a determination . . . ."

K.S.A. 2016 Supp. 21-5420(a) defines robbery as "knowingly taking property from the person or presence of another *by force* or by threat of bodily harm to any person." (Emphasis added.) Johnson admits that there was sufficient evidence that he removed the wedding ring from Zimmerman's finger without her consent. However, he argues that the force required to satisfy the statute requires that "a defendant must engage in an act of violence or resistance." In support of this position, Johnson relies on *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976).

In *Aldershof*, the defendant grabbed the purses of tavern patrons off their table during a power outage and quickly left. One of the victims ran after the defendant. She caught up with the defendant outside the tavern in the parking lot and managed to grab him. As she did so, the defendant turned and struck her in the eye. A jury convicted the defendant of robbery, but the Kansas Supreme Court reversed. In doing so, our Supreme Court concluded: "[T]he crime of robbery by forcibly taking money from the person of its owner . . . *is not committed where the thief has gained peaceable possession of the property* and uses no violence except to resist arrest or to effect his escape." (Emphasis added.) 220 Kan. at 803.

Here, a review of the record reveals circumstances that are substantially different from those in *Aldershof*. Johnson did not merely take Zimmerman's wedding ring from her car. Instead, Johnson removed it from her finger after she suffered a medical emergency. Clearly, Zimmerman could not have consented to Johnson taking her ring nor could she have taken it off her finger herself because she was unresponsive. Instead, it is reasonable to infer that Johnson would have had to have grabbed Zimmerman's hand and

4

pulled the ring off her finger. Thus, unlike the defendant in *Aldershof*, Johnson did not gain "peaceable possession" of Zimmerman's wedding ring.

The Kansas Supreme Court has found the snatching of a purse from a victim's arm to be robbery. *State v. McKinney*, 265 Kan. 104, 113-14, 961 P.2d 1 (1998). In reaching this conclusion, it found the holding in *Aldershof* to be instructive, noting that the *Aldershof* court declared that "'[r]obbery is not committed where the thief has gained peaceable possession of the property.'" *McKinney*, 265 Kan. at 114 (quoting *Aldershof*, 220 Kan. 798, Syl. ¶ 3). Our Supreme Court went on in *McKinney* to conclude that "[t]he flip side of the coin is that theft is not committed where the thief has used force to gain possession of the property." 265 Kan. at 114.

Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing." Black's Law Dictionary 760 (10th ed. 2014). We note that in the context of an excessive force claim against a law enforcement officer, our Supreme Court has held that "degree of force" is a question of fact. *Dauffenbach v. City of Wichita*, 233 Kan. 1028, Syl. ¶ 3, 667 P.2d 380 (1983). We believe the same is true regarding the question of the degree of force necessary to commit robbery in violation of K.S.A. 2016 Supp. 21-5420. Accordingly, we agree with the district court that whether Johnson removed the wedding ring from Zimmerman's finger by force—in other words, by power, violence, or pressure—was a question of fact to be decided by the jury.

Reviewing all of the evidence presented at trial in the light most favorable to the State, we find that there was evidence presented from which a reasonable finder of fact could conclude that Johnson asserted force in removing the wedding ring from the finger of the 43-year-old unconscious victim who had been married for 21 years. Therefore, we are convinced that there is sufficient evidence in the record upon which a rational factfinder could have concluded beyond a reasonable doubt that Johnson knowingly took

property from Zimmerman's person by force in violation of K.S.A. 2016 Supp. 21-5420(a).

*Aggravated Burglary Instruction*

Johnson next contends the district court erroneously failed to include the statutory elements of theft in the aggravated burglary instruction it gave to the jury. Because Johnson did not object to aggravated burglary instruction given at trial, we may only consider whether the district court committed a clear error. See K.S.A. 2016 Supp. 22-3414. We use a two-step process in determining whether the challenged jury instruction is clearly erroneous. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

When determining whether an instruction was clearly erroneous, the appellate court first determines whether there was any error at all. In making that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the appellate court determines that the district court erred in giving a challenged instruction, then the analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming an instruction is clearly erroneous—in this case Johnson—maintains the burden of establishing the degree of prejudice necessary for reversal. *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4, 5, 286 P.3d 195 (2012).

At trial, the district court gave the following jury instruction for aggravated burglary:

"INSTRUCTION 4

"The defendant is charged in Count 2 with Aggravated Burglary. The defendant pleads not guilty.

6

"To establish this charge, each of the following claims must be proved:

"1. The defendant entered a vehicle,

"2. The defendant did so without authority,

"3. The defendant did so with the intent to commit a theft therein,

"4. At the time there was a human being, to wit: Danielle Zimmerman [the victim], in the vehicle, and

"5. This act occurred on or about the 29th day of December, 2013, in Sedgwick County, Kansas.

"The State must prove that the defendant committed Count 2 intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

The language used in Instruction No. 4 is substantially similar to the language of K.S.A. 2016 Supp. 21-5807(b)(3), which defines aggravated burglary to be where a person "without authority, enter[s] into or remain[s] within any . . . (3) vehicle . . . in which there is a human being with intent to commit a felony, theft, or sexually motivated crime therein." The language of Instruction No. 4 also mirrors the language in PIK Crim. 4th 58.130 (2016 Supp.). As the Kansas Supreme Court has made clear, district courts are strongly recommended to use "PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

We also note that the Kansas Supreme Court has found that "[w]hen a statute makes . . . the intent to commit a crime an element of another crime, the jury instructions must set out the statutory elements of the underlying offense." *State v. Richardson*, 290 Kan. 176, 182, 224 P.3d 553 (2010). However, Instruction No. 4 was not the only instruction given to the jury on the subject of theft. As our Supreme Court noted in *State v. Brice*, 276 Kan. 758, 761, 80 P.3d 1113 (2003):

"In reviewing jury instructions, an appellate court is required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous."

In addition, our Supreme Court has held that we should presume that juries follow the instructions given to them by district courts. *State v. Holt*, 300 Kan. 985, 1005, 336 P.3d 312 (2014). Here, the very next instruction, Instruction No. 5, included the elements of theft as follows:

"The defendant is charged in Count 3 with Theft. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Danielle Zimmerman was the owner of the property,
"2. The defendant obtained unauthorized control over the property, to wit: purse, purse contends and cell phone,
"3. The defendant intended to deprive Danielle Zimmerman permanently of the use or benefit of that property,
"4. The value of the property was less than $1,000, and
"5. This act occurred on or between the 29th day of December, 2013, in Sedgwick County, Kansas.

"The State must prove that the defendant committed Count 3 intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

Accordingly, in reviewing the instructions together, we find that the jury was not misled.

Even if we assume that Instruction No. 4 should have also listed the elements of theft, we are not firmly convinced the jury would have reached a different verdict without the error. Instead, we find that the instructions given to the jury fairly stated the law as applied to the facts. In particular, reading the instructions as a whole, we find that they adequately informed the jury that in order to convict Johnson of aggravated robbery, it must unanimously find beyond a reasonable doubt that Johnson entered Zimmerman's vehicle without authority—while she was in it—with the intent to permanently deprive her of property.

Furthermore, we find that the alleged instructional error was harmless. An error is harmless if the appellate court is persuaded "beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record, i.e., . . . there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011). Here, we find the evidence is overwhelming that Johnson entered Zimmerman's car while she was incapacitated for the purpose of committing theft. This is confirmed by Johnson's statement to Saenz that he had robbed a "[d]umb white bitch" who had "passed out behind the wheel." There is absolutely no evidence in the record that he entered Zimmerman's vehicle to render aid or for any reason other than to steal her property. Accordingly, we find that the district court's failure to include the statutory elements of theft in the aggravated burglary instruction was not clearly erroneous.

*Prosecutorial Error*

Next, Johnson contends the prosecutor committed error during closing arguments by misstating the evidence presented during the trial. We employ a two-step process to evaluate claims of prosecutorial error. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). First, we must determine if error occurred by deciding whether the prosecutor's actions "fall outside the wide latitude afforded prosecutors to conduct the State's case and

9

attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. If error has occurred, then we must determine whether the error prejudiced the defendant's right to a fair trial under the constitutional harmless error standard. "[P]rosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" 305 Kan. at 109.

Here, Johnson argues that the following argument was erroneous:

"All right, now let's look at [Thomas-Hameen's] testimony. . . . [A]s we saw during cross-examination, [Thomas-Hameen's] version of [t]he timeline just doesn't check out, but whose version, who[se] timeline does check out?

"At 8:47 [Thomas-Hameen's] is leaving the store. A minute and 20, 30 seconds later Chris Payne [a Taco Bell employee] *is looking out the window because he hears the crash*. Chris Payne's out the door later that same minute and the silver car from the video is right there, drives off a couple minutes later. So [Thomas-Hameen] is saying that this happens right when he gets outside, but that's when Hickles is coming in but we know there is at least a minute where that's not the case and [Thomas-Hameen] even said during the plea hearing he's here to help Mr. Johnson. He tells you a different story today. . . . Again, weigh the credibility." (Emphasis added.)

Johnson argues that the emphasized portion of this statement was a significant misstatement of the evidence and was extremely prejudicial to his defense. Specifically, Johnson argues that Payne did not actually hear the crash. Surveillance video taken from inside the Taco Bell on the night of December 29, 2013, established that Thomas-Hareem entered the restaurant at 7:46 p.m. About a minute later, he exited the restaurant. About two minutes after Thomas-Hareem left, Payne leaned out the drive-thru window.

10

At trial, Payne testified that he was caught off guard when the victim pulled up to the drive-thru speaker box at Taco Bell and then did not respond for 30 to 45 seconds. This delay—and not any particular noise—caused Payne to lean out the drive-thru window. It was at that point that he noticed Zimmerman had crashed her car. The combination of the restaurant's surveillance video and Payne's testimony thus established that Zimmerman wrecked her vehicle sometime around 7:48 p.m.

Thomas-Hareem, who was called as a witness by Johnson, testified that he and Hickles witnessed Zimmerman crash her car into the drive-thru speaker as they entered the Taco Bell. According to Thomas-Hareem, Hickles then walked back outside and it was Hickles who went to the victim's car and stole her property. Although there is a discrepancy between the testimony of Thomas-Hareem and Payne, the Taco Bell's surveillance video bolsters Payne's version of the events on the night of December 29, 2013.

In its brief, the State argues that the prosecutor's statements in his closing arguments were "merely pointing out for the jury that [Thomas-Hareem's] assertion was in direct opposition to the evidence captured from [the Taco Bell surveillance camera]." "The import of [these] statements," the State argues, "is the contradiction in timing [and] the precise reason why Chris Payne leaned out the window is merely a benign explanation." We agree.

Although it appears that the prosecutor misspoke regarding Payne hearing the crash, this was an isolated statement that simply highlighted the fact that Thomas-Hareem and Payne gave conflicting testimony regarding the timing of events. Indeed, during his testimony at trial, Thomas-Hareem recognized that "it's his word against mine." Thus, the fact that there were discrepancies between the testimony of Thomas-Hareem and Payne was known to jury, and we do not find the misstatement about why Payne leaned out the drive-thru window rises to the level of prosecutorial error.

11

Even if the misstatement by the prosecutor constituted prosecutorial error, we do not find that it prejudiced Johnson's constitutional right to a fair trial. We evaluate prejudice using the traditional constitutional harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). To determine the harmlessness of an error, we "consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—i.e., shown that there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. at 111.

Based on our review of the record, we find no reason to conclude that the prosecutor's statement prejudiced Johnson's ability to defend himself. The evidence against Johnson was significant—if not overwhelming—and the prosecutor's misstatement did not influence the jury's decision to convict Johnson. As previously noted, surveillance video bolstered Payne's version of the events. Moreover, Saenz testified that Johnson admitted to her that he had robbed a "[d]umb white bitch" who had "passed out behind the wheel." She further testified that Johnson later showed her a cell phone and two rings that he had stolen.

We, therefore, conclude that the State did not commit prosecutorial error during closing arguments and, even if it did, the alleged error did not prejudice Johnson's constitutional right to a fair trial.

*Criminal History*

Finally, Johnson contends the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it enhanced his sentence based upon his criminal history without first requiring the State to include his prior convictions in its complaint and to prove those convictions to a jury beyond a reasonable doubt. The Kansas Supreme Court rejected a similar argument in *State v. Ivory*, 273 Kan.

12

44, 46-48, 41 P.3d 781 (2002). Since then, this state's Supreme Court has reaffirmed *Ivory* on multiple occasions. See *State v. Williams*, 299 Kan. 911, 941, 329 P.3d 400 (2014); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008).

We are required to follow precedent absent some indication that our Supreme Court is departing from its earlier position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 12*8*, *rev. denied* 302 Kan. 1012 (2015). We find no indication that our Supreme Court plans to depart from its position set forth in *Ivory*. Thus, we conclude that the district court did not violate *Apprendi* when it used Johnson's criminal history as part of its sentencing calculations.

Affirmed.